FINTON J. PHELAN, ADMINISTRATOR, ET AL., *vs.* FRANK ELBIN ET ALS.

Third Judicial District, New Haven, January Term, 1911.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, JS.

A mortgage by one of several heirs at law, of his interest in the land of his intestate before any distribution of the estate has been made, is valid, and will operate either by way of estoppel or as an assignment of such heir's interest. The mortgagee's interest thus acquired will, however, be divested, if the land is afterward needed for the payment of debts and is sold for that purpose by order of the Court of Probate; but if sold simply for purposes of distribution and not for the payment of debts or expenses of settlement, the proceeds constitute a special fund which will be distributed, pursuant to the provisions of the statute (§ 353), as the land itself would have been had there been no sale, and such fund will be subject to all the equities with which the real estate was charged at the time of its sale. In this way the substantial rights of the

mortgagee will be preserved and the settlement of the estate accomplished in a due and orderly manner.

A motion to amend the assignments of error which is not filed until after the term to which the appeal was taken has expired, comes too late.

An appellant cannot complain of rulings upon questions in which he has no interest.

Argued January 19th—decided March 8th, 1911.

SUIT in equity to settle and determine the rights of the parties in and to the sum of $4,000 in the hands of one of the defendants, and the validity and effect of a mortgage of real estate made by an heir at law prior to distribution, brought to and tried by the Superior Court in New Haven County, *Reed, J.;* facts found and judgment rendered in favor of the defendant Downey, and appeal by one of the plaintiffs.  *No error.*

*John O'Neill* and *Finton J. Phelan,* for the appellant (plaintiff Moriarty, administratrix).

*Edward F. Cole,* for the appellee (defendant Downey).

*Frank W. Etheridge,* for the appellees (defendants Thomaston Savings Bank and Frank Elbin).

THAYER, J.  The pleadings in this case are somewhat peculiar.  No interpleader is asked for in the complaint, and there does not appear to have been any interlocutory judgment of interpleader.  The parties, however, interpleaded, and the court, both in its memorandum of decision and finding of facts, speaks of the case as an action of interpleader.  It has been so treated in this court by the parties without question.  The questions which the court has found that the parties conceded to be the only ones to be considered upon the trial are fairly presented by the answers and replies of the interpleading defendants.  We treat the action, therefore, as one of interpleader, as the court below and

the parties have done, and as presenting for adjudication the questions referred to..

The parties by their pleadings were in accord as to the facts bearing upon these questions. The facts were substantially these: Bridget Donahue ‘died intestate January 6th, 1892. She left a husband surviving her and five children, who were her only heirs at law. Her estate consisted for the most part of her interest, as one of two heirs at law of her brother Patrick Coyle, who died in 1890, in five pieces of real estate in Waterbury which belonged to her brother's estate, and which at the time of her death had not been distributed. On February 5th, 1892, one of her sons, Thomas Donahue, mortgaged his interest in these five pieces of land to the defendant Downey to secure a note for $2,000. His mortgage deed contained the usual covenants of title and warranty. In the distribution of Coyle's estate on March 29th, 1892, two of these pieces of land were set to Bridget Donahue's estate. Her husband immediately went into possession of them as tenant by the curtesy and occupied them until his death on February 5th, 1906. In May, 1892, Christopher F. Downey was appointed administrator of Bridget Donahue's estate, and after the time limited for the presentation of claims had expired made return to the Court of Probate that no claims had been presented against her estate. He subsequently resigned as administrator. After the death of the life tenant of said lands, Mary Ann Donahue was appointed administratrix *de bonis non* of Bridget Donahue's estate. She was removed later, and the plaintiff Phelan appointed in her place. Thomas Donahue died in July, 1892, and the appellant, Mary D. Moriarty, was appointed and remains administratrix of his estate. The defendant Downey did not present any claim against Thomas Donahue's estate. On January 23d, 1907, he brought a suit for the fore-

closure of his mortgage against the estate and heirs at law of Thomas Donahue. On the 24th of January, 1907, Mary Ann Donahue, then the administratrix of Bridget Donahue's estate, acting under an order from the Court of Probate, sold the two pieces of land aforesaid to the defendant Elbin for $23,000. She agreed with him that $4,000 of the purchase price might be retained by him until the Downey incumbrance should be cleared from the record. Elbin, to raise a portion of the purchase money, mortgaged the land to the defendant the Thomaston Savings Bank to secure a loan of $15,000, on which he received $11,000 in cash and the bank agreed to pay him the balance, $4,000, when all incumbrances on the land should be discharged from the record. It gave him at the time a writing, of which the following is a copy: "February 1, 1907. This is to certify, that there is due Frank Elbin of Waterbury, Connecticut, the sum of four thousand dollars ($4,000) the same being a balance upon a mortgage note of fifteen thousand dollars ($15,000), bearing date of January 29, 1907, secured by a mortgage of even date, covering certain real estate in Waterbury, Connecticut. This balance to be paid said Elbin when all incumbrances which may now appear upon said property are removed and discharged and we, The Thomaston Savings Bank, have the only claim and mortgage thereon." This instrument was on the same day assigned by Elbin to Mary Ann Donahue, administratrix, and when this action was commenced was held by the plaintiff Phelan as her successor. Pending the suit it was transferred by him to the appellant, who by reason thereof was made a party plaintiff. Downey obtained a judgment of foreclosure in his suit against the estate and heirs of Thomas Donahue on April 22d, 1908, the amount of the debt and costs then due being, as found, $4,009.13, which judgment was on appeal affirmed by this court.

*Downey* v. *Moriarty*, 81 Conn. 442, 71 Atl. 581. The estate and heirs of Thomas Donahue did not redeem the mortgage. On September 19th, 1908, Mary Ann Donahue settled her account as administratrix with the estate of Bridget Donahue, showing a balance of $23,171.80 in her hands for distribution, and the court ascertained the heirs entitled thereto and ordered a distribution. One-fifth part was to be distributed to the appellant, as administratrix of the estate of Thomas Donahue. This has never been done. The other four heirs have received their shares.

As the heir of Bridget, who was an heir of Coyle, Thomas, at the time he gave the mortgage, had an interest in the five pieces of land described therein, and when two of the pieces were distributed to Bridget's estate his interest in those two was confirmed and in the other three destroyed. *Downey* v. *Moriarty*, 81 Conn. 442, 71 Atl. 581. The mortgage conveyed a proprietary interest in the two parcels which were distributed to Bridget's estate. *Id.* The heir at law takes a vested interest in all the real estate of an intestate immediately upon the latter's death. *Dorrance* v. *Raynsford*, 67 Conn. 1, 6, 34 Atl. 706. A conveyance by the heir of his interest in such real estate, before distribution of the estate, stands good, and operates either by way of estoppel or as an assignment of the heir's interest. *Dickinson's Appeal*, 54 Conn. 224, 227, 6 Atl. 422. If, therefore, the real estate itself had been distributed in the present case, Downey through his mortgage and its foreclosure would have been entitled to the share which would have been set to the estate of Thomas. The distribution would be to the estate of Thomas, because it relates back to the death of Bridget, and the Court of Probate could take no account of transfers made by the heirs prior to such distribution. *Holcomb* v. *Sherwood*, 29 Conn. 418, 419; *Ward* v. *Ives*, 75 id. 598, 601,

54 Atl. 730; *State ex rel. Moriarty* v. *Donahue*, 82 Conn. 308, 311, 73 Atl. 763. But the heir's interest, and, of course, that of his grantee, is divested and taken away when it becomes necessary to sell the real estate and devote the proceeds to the payment of the debts and expenses of settling the estate. In such a case the proceeds of the sale are not held for the purpose of being distributed to the heir, but to pay the creditors of the estate who had a prior lien upon it for the payment of their debts. *Griswold* v. *Bigelow*, 6 Conn. 258, 263. The real estate is charged with the payment of the debts.

It is claimed that the same results followed the sale in the present case, and that Downey thereby ceased to have any interest in either the real estate or its proceeds. The real estate in this case, as the finding shows, was not required to pay debts or expenses of settling the estate. The entire proceeds of the sale, therefore, were to be distributed as the real estate would have been distributed, had the sale not been made. General Statutes, § 353. Formerly the Court of Probate had no power to order the sale of the decedent's real estate unless it was needed to pay debts of the estate, and then only so much of it as was sufficient to pay the excess of the debts above the personal estate. So much of it was considered as a fund held for the payment of the debts, upon which the creditors had a lien prior to the heir. *Griswold* v. *Bigelow*, 6 Conn. 258. Now, under the statute mentioned, the court may at its discretion order the sale of the whole or any part of the real estate, whether needed to pay debts or not. *Buel's Appeal*, 60 Conn. 63, 67, 22 Atl. 488. In ordering such a sale the Court of Probate is exercising a special statutory power. *Dorrance* v. *Raynsford*, 67 Conn. 1, 6, 34 Atl. 706. The administrator or executor in making the sale is exercising a power granted him by the court's order. The proceeds of the sale beyond the amount, if any,

required to pay debts do not become a part of the estate which he is administering, but form a special fund. *State* v. *Thresher*, 77 Conn. 70, 75, 58 Atl. 460; *State ex rel. Moriarty* v. *Donahue*, 82 Conn. 308, 73 Atl. 763. The statute treats this fund as real estate, directing that it shall be distributed as the real estatr would have been; this must mean to the same persons, and subject, as between them, to the same incumbrances, conveyances, and equities to which the real estate would have been subject, had there been no conversion, and the real estate itself had been distributed. It cannot have been the intention, by this statute, to turn over the fund to heirs who have sold and received full value for their shares, or to thwart attaching creditors who have perfected liens upon such heirs' interest in the land. A sale to pay debts, it is true, may in some cases have the effect to defeat the claims of assignees and creditors of the heir, but in such cases the heir has no real interest in the estate. It all belongs to the creditors. It is to cases of this character that our attention has been called by counsel for the appellant. That such a sale has that effect affords no support to the claim that the sale for the purposes of distribution should have the same effect. We think that it does not have, but that the special fund as created is subject to all the equities with which the real estate was charged at the time of the sale. Thomas Donahue by his mortgage conveyed his interest in the real estate to Downey. An equity to redeem by paying the amount due upon the mortgage remained in Thomas and, after his death, in his heirs. They failed to redeem, and were foreclosed of that equity. Downey thereupon became entitled to the fund. His debt, with interest, amounted at the time of the distribution to more than Thomas' share. The court properly decided that the $4,000 in controversy should be paid to him.

It is useless to consider what the strict legal rights were between the estate of Bridget and the defendants Elbin and the savings-bank. It may be, as claimed by the appellant, that the administrator could only sell for cash, and acted improperly in leaving $4,000 unpaid, and that the estate could compel the payment to it of the $4,000. The bank and Elbin did not deny their liability to pay the $4,000 when the cloud of Downey's mortgage should be removed from the record. That incumbrance standing in the way of its payment, and the appellant and Downey both claiming the fund, this action was brought to determine the rights of all parties and to clear the title. The parties have all treated the action as adequate for that purpose and interpleaded. It is necessary to consider only such questions as are properly raised by the appeal. The question which has been considered is raised by the second and fourth assignments of error.

As to the remaining two assignments, it does not appear that the rulings therein complained of were in fact made or that the appellant was aggrieved by them if they were made.

The appellant, after the term to which the appeal was taken had passed, made a motion to be allowed to amend her reasons of appeal. The motion came too late. Practice Book, 1908, p. 279, § 39; *Union Trust Co.* v. *Stamford Trust Co.*, 72 Conn. 86, 95, 43 Atl. 555. Aside from this reason, it is apparent on the face of the amended reasons which were filed that, so far as new questions are attempted to be raised, the appellant has no interest in their determination, as she cannot have been injured by the decisions therein complained of. The motion is denied.

There is no error.

In this opinion the other judges concurred.