ALFRED J. KEPPELMANN et al., trustees, complainants,

*v.*

ERICH P. KEPPELMANN et al., respondents.

[Decided November 17th, 1919.]

1. Under the Trading with the Enemy act (*U. S. Comp. Stat. 1918 §
3115½d*) property held by a trustee under a will for the benefit of an
alien enemy is subject to seizure by the alien property custodian.

2. The right of the alien property custodian is not affected by the fact
that before the war the alien enemy beneficiaries had executed powers of
attorney to certain bankers, authorizing them to receive and receipt for
such sums as might be distributed to them by the trustees.

3. Trustees holding under a will trust funds for alien enemy benefi-
ciaries are not entitled as a condition precedent to delivering such funds
to the alien property custodian to receive a refunding bond as required
by the New Jersey Legacy act.

Appeal of A. Mitchell Palmer, alien property custodian.

On appeal from the court of chancery advised by Vice-Chan-
cellor Lane, whose opinion is reported in *89 N. J. Eq. 390.*

*Mr. Charles L. Carrick, Mr. Mansfield Ferry* (of the New
York bar) and *Mr. LaRue Brown,* assistant attorney-general of
the United States, for the appellants.

*Messrs. Edward M. & Runyon Colie,* for the respondents Kep-
pelmann trustees.

*Mr. Martin V. Bergen* and *Mr. Ruby R. Vale* (of the Penn-
sylvania bar), for the respondents Schulz & Ruckgaber.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

The bill in this case was filed by the complainants as trustees
under the will of the late Adolphus Keppelmann for the purpose

of obtaining instructions from the court with relation to the execution by them of certain of the trusts imposed upon them by the will. The situation which the case discloses, so far as the disposition of the matters in controversy makes their recital necessary, is as follows: Adolphus Keppelmann, at the time of his death, was a resident of South Orange, in this state. He died in 1913. By his will he created certain trusts for the benefit respectively of three of his daughters, Bertha VonBorowsky, Pauline Adolphine Losch and Louise Pauline Schulz. Two of these daughters were residents of Germany, and the third lived in Austria. Some months after the death of their father each of these daughters executed a power of attorney to Schulz & Ruckgaber, bankers of New York City, authorizing them to receive and receipt for in the name of the principal such securities and sums of money as might be distributed to the principal from time to time by the trustees of their father's will, and to deliver for the principal refunding bonds duly executed by the principal for such securities and such sums of money distributed to the principal under the last will and testament of Adolphus Keppelmann, and to collect for the principal all income upon such securities, and to do all other things on behalf of the principal in relation to such securities, or the receipt of such moneys; with full power and authority to do and perform all other acts and things whatsoever requisite and necessary to be done in and about the premises as fully to all intents and purposes as the principal might or could do if personally present. Before the trusts created for the benefit of these three daughters had been executed war was declared by this country against Germany, and afterwards against Austria, and the alien property custodian, Mr. Palmer (appointed by the President, pursuant to authority conferred upon him for that purpose by the federal statute of October 6th, 1917, and commonly known as the "Trading with the Enemy act"), having concluded, after an investigation, that the three beneficiaries were alien enemies within the meaning of the federal statute, did, in pursuance of the provisions of that act, make demand upon Messrs. Keppelmann and Colie, trustees, for the payment to him of the shares of these alien enemies. Schulz & Ruckgaber, the attorneys in fact of the three daughters,

protested to the trustees against their complying with Mr. Palmer's demand, insisting that these shares were payable to them by force of the powers of attorney which they held. The complainants have executed the trusts created by the will, except the turning over of the trust estates to the parties legally entitled to receive them; but being in doubt whether they should comply with the demand of Mr. Palmer, or recognize the claim of Messrs. Schulz & Ruckgaber, they have filed this bill.

The first question argued before us is whether property held by a trustee under a will for the benefit of an alien enemy comes within the purview of the "Trading with the Enemy act;" the argument made on behalf of Messrs. Schulz & Ruckgaber being that it is only property the legal title to which is in the alien enemy that is subject to seizure by the alien property custodian. But this contention, as it seems to us, is in the face of the very language of the statute. The provision of section 7 (*c*) of the act is as follows:

"If the President shall so require any money or other property owing or belonging to, or held for or on account of, or on behalf of, or for the benefit of an enemy, or ally of an enemy, * * * shall be conveyed, transferred, assigned, delivered or paid over to the alien property custodian;"

and the order necessary for the carrying into effect of this enactment was duly made by the President. The manifest purpose of congress was that the statute should operate not only upon property, the legal title to which is in the alien, but on all property held for him, or for his benefit, whether the legal title be in him or in the person who holds it for his benefit. In the present case, the property is held in trust by the complainants solely for the benefit of these three daughters of the testator, and comes within the very words of the statute, for, although they are not the holders of the legal title to the trust estate, they are the equitable owners thereof, the whole beneficial interest being lodged in them.

Reaching the conclusion that these trust estates are within the purview of the federal statute, we are called upon to consider the soundness of the claim made on behalf of Messrs. Schulz &

Ruckgaber, that, even if it be held that as against the alien ene-
mies themselves, Mr. Palmer, as alien property custodian, is en-
titled to the present possession and control of these trust estates,
still he is not entitled to such possession as against them, the
reason being that as the letters of attorney were made before the
declaration of war, they consequently remain in full force and
effect, notwithstanding such declaration. Except for the fact
that the point has been strenuously insisted upon by counsel for
this firm of bankers, and the further fact that their contention
was sustained to some extent by the court below, we should not
refer to it, for it seems to us manifestly to be without substance.
These gentlemen have no personal interest in the subject-matter
of this litigation; they are merely the understudies of these
three alien enemies. What the principals could do the attorneys
in fact may do. What the principals are entitled to receive their
attorneys-in-fact, as their represenatives, are entitled to receive.
But it seems too plain for argument that the rights of the attor-
ney cannot be superior to those of the principal. The stream
cannot rise higher than its source. If the principals are entitled
to receive these funds from the trustees, the attorneys are, be-
cause they stand in the place of the principals; if the principals
are not entitled to receive these funds, their attorneys are not,
for they are mere representatives of the principals, only entitled
to receive for them what they personally would receive except for
the fact that they had created attorneys to represent them. If
the principals are barred by the federal statute from the present
receipt of the moneys held for their benefit by the complaining
trustees, their attorneys in fact are equally barred. If the alien
property custodian is entitled as against these alien enemies to
the present possession and custody of these trust estates, that
right is equally complete against any person who stands in their
shoes.

The only other question discussed at the argument is whether
the complainants are under a legal obligation to deliver over
these shares in the testator's estate to the alien property custo-
dian, unless and until he has executed and delivered to them a
proper refunding bond in accordance with the requirements of
our statute concerning legacies. *Comp. Stat. p. 3089 § 5.*

We have no doubt as to the duty of the complainants. War having been declared, everything necessary to be done for the preservation of the nation, and to make the war effective, was within the power of congress. That body deemed it necessary, among other things, to take possession of all property of alien enemies located in this country, and so prevent its use by the enemy for purposes inimical to our own safety. This, and all other war measures enacted by congress, necessarily override state statutes in conflict therewith.

So, too, every state law that imposes limitations upon the scope of the federal legislation must give way to it, provided that such an intent is to be gathered from the enactment. In the present case, such intent is apparent, for congress has declared, in section 7 (*c*) of the "Trading with the Enemy act," that any payment, conveyance, transfer, assignment or delivery of money or property to the alien property custodian hereunder shall be a full acquittance and discharge for all purposes of the obligation of the person making the same to the extent of the same.

We hold, therefore, that it is the duty of these complainants to deliver up to the alien property custodian the property which they hold for the benefit of these three alien enemies; and that they are not entitled, as against him, to receive as a condition precedent to such delivery a refunding bond such as is required by our Legacy act.

The decree under review will be reversed.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, ACKERSON—13.