THOMAS W. MILLER, as Alien Property Custodian of the United States of America, Respondent, v. JOSEPH LAUTENBURG, Appellant.

Real property — title — specific performance — authority of Alien Property Custodian to seize and sell real property belonging to alien enemy — validity of title — authority to divest inchoate right of dower.

1. The Trading with the Enemy Act (40 Stat. 411, ch. 106) and executive orders made under its authority empower the President or his delegate, the Alien Property Custodian, to make demand for the conveyance or delivery of any property which the President or his said delegate may determine to be enemy owned. An amendment (40 Stat. 1020, ch. 201, § 7c) clothes the Custodian with the power to seize. In default of claim for restitution, rights and remedies are transferred from the thing itself to the proceeds. The determination by the delegate of the President that the property is enemy owned has the same force as a like determination by the President himself and, though not conclusive, has *prima facie* a validity that suffices to sustain a transfer of possession.

2. Where, in an action by the Alien Property Custodian of the United States to compel specific performance of a contract by defendant to purchase real property, rejected upon the ground that plaintiff had no authority to sell, the record shows that in July, 1918, the then Alien Property Custodian determined that the record owner of the property in suit was an enemy alien and served a notice upon a supposed agent demanding delivery of the property and thereafter entered upon the property and exercised all the rights and privileges that are the common incidents of ownership, seizure of the property is shown which is the equivalent of notice and the validity of the title tendered must be upheld.

3. It is unimportant that the entry by the Custodian preceded by about three months the adoption of the amendment which authorized resort to force. The seizure was a continuing one. In such circumstances the mandate of the statute puts him in the position of a common-law trustee with powers of management and sale.

4. As seizure of the *res* gives authority to the Custodian to divest the ownership of the fee, it must be equally effective to divest an inchoate right of dower. Under the law as it stood in 1918, a woman married to an alien became an alien herself. The determination that

the owner was an enemy alien was thus equivalent to a like determination as to the status of his wife. The seizure of the property imports the seizure of every interest determined by due authority to be enemy owned.

*Miller* v. *Lautenburg,* 209 App. Div. 608, affirmed.

(Argued October 16, 1924; decided November 25, 1924.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 24, 1924, in favor of plaintiff, upon the submission of a controversy under sections 546–548 of the Civil Practice Act.

*Abraham Vogel* for appellant. The instrument above mentioned does not sufficiently set forth that the fee of the premises in question is required by the Alien Property Custodian, within the provisions of the Trading with the Enemy Act and executive orders and proclamations of the President therein provided for and the fee title was not vested in the Alien Property Custodian thereby. (*Day* v. *Union,* 18 Wall. 156; *Matter of Marmard,* 20 Wall. 114; *Risley* v. *Phenix Bank,* 83 N. Y. 318.) The demand which makes no mention of the wife of Ernst Haertel does not bar her dower right. (*Kurshedt* v. *Union D. S. Inst.,* 118 N. Y. 358.)

*Schuyler M. Meyer* and *Louis Dean Speir* for respondent. The demand dated the 23d day of July, 1918, directed to Heinrich Eulenstein, was sufficient notice under the Trading with the Enemy Act and the executive orders of the President issued thereunder, to the enemy alien, Ernst Haertel, of the seizure of the property in question. (*Central Trust Co.* v. *Garvan,* 254 U. S. 554; *Stoehr* v. *Wallace,* 255 U. S. 239.) The demand which makes no mention of the wife of Ernst Haertel is sufficient to bar her dower right. (*Techt* v. *Hughes,* 229 U. S. 222; *Moore* v. *City of New York,* 8 N. Y. 110; *Matter of N. Y. & B. Bridge,* 75 Hun, 588; 143 N. Y. 640.) The physical

seizure of the property on August 5, 1918, was sufficient notice to the alien enemy of the requirement of the Alien Property Custodian, and to otherwise cure any alleged defects there might be in the original instrument dated July 23, 1918, issued as the formal demand or requirement of the Alien Property Custodian so as to vest in the Alien Property Custodian the fee of said premises. (*Matter of Miller*, 281 Fed. Rep. 764; *C. U. Trust Co. v. Garvan*, 254 U. S. 554; *Stoehr v. Wallace*, 255 U. S. 239.)

CARDOZO, J. The plaintiff, the Alien Property Custodian, made a contract with the defendant for the sale of land and buildings in the city of New York. The purchaser refused the tendered deed upon the ground that the seller's title was unmarketable. The Appellate Division upon an agreed statement of the facts overruled the objections and sustained the title. The case is here after the allowance of an appeal.

In July, 1918, A. Mitchell Palmer, then the Alien Property Custodian, determined that Ernst Haertel, the record owner of this property, was an enemy alien. Following this determination, he prepared a notice directed to the owner, demanding that the property be delivered to the Custodian forthwith. Service of this notice was made August 5, 1918, not upon the owner, but upon one Heinrich Eulenstein, who was supposed to be his agent. Eulenstein had executed a lease as attorney for Haertel earlier in the year, whether under a general power of attorney or under one limited to that transaction the record does not show. There is no evidence of his agency at the time of the demand unless the existence of such a lease is sufficient to supply it. The Custodian, having made this demand, entered upon the property, notified the tenants that his representative was authorized to collect the rents, and did collect the rents for about five years thereafter. During the same period, he paid taxes, interest on the mortgages, and other carrying

charges, and exercised all the rights and privileges that are the common incidents of ownership. The question is whether by force of the demand or of the seizure, he became authorized to sell.

Five objections to the title were offered in the court below. The first four have relation to the effectiveness of a mere demand by the Custodian as a substitute for a conveyance. The fifth has relation to the effect of a seizure of the *res.*

The Trading with the Enemy Act of October 6, 1917 (40 Stat. 411, ch. 106), and Executive Orders made under its authority empower the President or his delegate, the Alien Property Custodian, to make demand for the conveyance or delivery of any property which the President or his said delegate may determine to be enemy owned. Obedience to a demand so made becomes thereupon the duty of the owner or his agent. If the act had been left in this form, there would have been opportunity for argument that upon a refusal of a conveyance or delivery, the Custodian would be helpless without the aid of a judgment of a court. An amendment was accordingly adopted on November 4, 1918 (40 Stat. 1020, ch. 201, § 7c), which clothes the Custodian with the power to seize. Property brought into his possession either through compliance with the demand or through " a taking with the strong hand " (*Central Union Trust Co. of N. Y.* v. *Garvan*, 254 U. S. 554, 568), he is to hold with the same powers as those of a common-law trustee, including, specifically, the power to dispose thereof by sale or otherwise as if an absolute owner (Trading with Enemy Act, § 12, as amended by the Appropriation Act of March 28, 1918, 40 Stat. 460, ch. 28). The power to sell is subject, indeed, to a single limitation. If a claim for restitution is filed either by the putative enemy or by another, the property, unless returned, must be held by the Custodian intact until the merits of the claim have been judicially determined (*Central Union Trust Co.* v. *Garvan, supra,*

p. 568; Trading with the Enemy Act, § 9). In default of such a claim, rights and remedies are transferred from the thing itself to the proceeds (§ 7c, as amended November 4, 1918, 40 Stat. 460, ch. 28). These provisions have been upheld by the Supreme Court as a valid exercise of the war power (*Central Union Trust Co.* v. *Garvan, supra; Stoehr* v. *Wallace,* 255 U. S. 239; *Commercial Trust Co. of N. J.* v. *Miller,* 262 U. S. 51). Under the rulings of that court the determination by the delegate of the President that the property is enemy owned has the same force as a like determination by the President himself. The determination, though not conclusive, has *prima facie* a validity that suffices to sustain a transfer of possession. If it is challenged as erroneous, there may be contest and restitution (*Central Union Trust Co.* v. *Garvan, supra,* p. 567; *Commercial Trust Co. of N. J.* v. *Miller, supra,* p. 55).

In upholding on this record the validity of the title tendered, we do so on the ground that the power to sell is to be derived from the seizure of the property. We hold that such seizure was made and that it is the equivalent of notice (*Pennoyer* v. *Neff,* 95 U. S. 714, 727; *Security Savings Bank* v. *California,* 263 U. S. 282, 287). If Haertel was not an enemy alien, he has had ample opportunity to prove himself a friend and to have the property returned. Even if the sale is made, he will have an opportunity hereafter to establish an interest in the proceeds. We think it unimportant that the entry by the Custodian preceded by about three months the adoption of the amendment which authorized resort to force. The seizure was a continuing one. For nearly five years, the Custodian maintained a possession that was hostile and exclusive. In such circumstances the mandate of the statute puts him in the position of a common-law trustee with powers of management and sale.

If seizure of the *res* gives authority to the Custodian to divest the ownership of the fee, it must be equally

effective to divest an inchoate right of dower. Under. the law as it stood in 1918, a woman married to an alien became an alien herself. The determination that Haertel was an enemy alien was thus equivalent to a like determination as to the status of his wife. The seizure of the property imports the seizure of every interest determined by. due authority to be enemy owned.

The conclusion thus reached makes it unnecessary to decide whether the service of the demand, if not followed by seizure, would be sufficient without more to authorize a sale. Service without more would certainly be unavailing for such a purpose unless Eulenstein, who was served, was the agent of the owner, or unless the determination by the Custodian that he was such an agent is binding on the owner and so controlling on the court. Whether he was in truth an agent, we do not know. The evidence is too sparse to enable us to say (*Cerf* v. *Diener,* 210 N. Y. 156, 162). Whether service on one supposed to be an agent is effective against the owner if the supposition is erroneous, is a question that ought not to be answered till the need to answer it arises. In saying this, we are not unmindful of section 336 of the Real Property Law (Cons. Laws, ch. 50), adopted April 30, 1921, by which all the recitals of the notice are declared to be conclusive after the expiration of three months following record in the proper office. These provisions were not adopted by Congress, the organ of the nation, in the exercise of the war power. They are the legislation of the State. The power of the State to create a conclusive presumption of agency binding upon the owner though there has been no seizure of the *res,* ought not to be affirmed except upon a record making the decision essential to a determination of the controversy, nor even then without argument of counsel directed to the point. It is enough for present purposes that seizure has been made.

The statute prescribes a sale at public auction to the highest bidder unless the President by special order dis-

penses with that requirement (Amendment of March 28, 1918; 40 Stat. 460, ch. 28). No objection is urged by the purchaser to the acceptance of a conveyance in fulfillment of a private sale. We assume in such circumstances that the special order has been made.

The judgment should be affirmed with costs.

HISCOCK, Ch. J., POUND, MCLAUGHLIN, CRANE, ANDREWS and LEHMAN, JJ., concur.

Judgment affirmed.