ROGER S. NEWELL, ADMINISTRATOR C. T. A. (ESTATE OF FREDERICK B. SCUDDER) v. CHARLES J. McLAUGHLIN.

MALTBIE, C. J., HINMAN, AVERY and BROWN, Js.[1]

Argued November 7—decided December 6, 1939.

[1] By agreement of counsel the case was argued before and decided by four judges.

*Charles H. Blackall,* for the appellant (plaintiff).

*Frederick W. Dauch,* deputy tax commissioner, with whom, on the brief, was *Charles J. McLaughlin,* tax commissioner, and *Francis A. Pallotti,* attorney general, for the appellee (defendant).

HINMAN, J.  Frederick B. Scudder of Bristol died May 11, 1937, leaving a will by which his estate was divided between his widow and a daughter.  The plaintiff is administrator c. t. a.  The inventory and appraisal showed a total valuation of $229,526.06, practically all in corporate stocks and bonds.  The tax commissioner based computation of the succession tax due the state under Chapter 77 of the General Statutes upon that valuation, allowed deductions of items authorized under General Statutes, § 1369, Cum. Sup. 1935, §490c, amounting to $29,804.02, and determined the net taxable estate to be $199,722.04 and the tax $4641.66.  The Court of Probate entered a decree finding this computation correct.  From this the plaintiff appealed to the Superior Court claiming that the tax should be computed, instead, on the fair market value of the property at the time it was distributed and delivered to the legatees March 31, 1938, which, it is stipulated, was $106,043.93.  The same contention constitutes the only issue on this appeal from the judgment dismissing the appeal from probate.

The original collateral inheritance tax statute, Public Acts, 1889, Chapter 180, contained a provision (§ 9) that a copy of the inventory of every estate subject to the tax with the appraisal thereof should be sent to the treasurer of the state within ten days after filing.  Section 12 provided that "the value of such property as may be subject to said tax shall be its actual market value as found by the court of probate,"

but that on application of the state treasurer or any person interested in the succession the Court of Probate should appoint three persons who "shall view and appraise such property at its actual market value for the purposes of said tax" and make return thereof to the court, "which return may be accepted . . . in the same manner as the original inventory . . . and . . . shall be binding upon the person by whom this tax is to be paid, and upon the state." The successor to this statute, Public Acts, 1897, Chapter 201, in § 3 (General Statutes, 1902, § 2369), provided that the Court of Probate within ten days after the return and acceptance of the inventory and appraisal provided to be made by General Statutes, 1888, § 578 (General Statutes, 1902, § 323) should send a certified copy thereof to the state treasurer, and if no new appraisal is made (on application of the treasurer or any person interested in the succession and after hearing as afterward provided in that section) "the valuation therein given shall be taken as the basis for computing said taxes." In 1915 (Public Acts, Chap. 332, §2) the provisions for making of inventory (General Statutes, 1902, § 323), sending a copy to the tax commissioner instead of the treasurer, and for reappraisal if ordered by the Court of Probate after hearing (General Statutes, 1902, §2369), were consolidated in one section. This also contained provisions that, if no reappraisal was asked for "the valuations in the original inventory and appraisal" shall be the basis for computing the tax, and if there is a reappraisal or a correction as to valuation of any item, in the manner therein provided, "the valuations in the return accepted by the court shall be the basis for such tax." In 1917, Public Acts, Chapter 356, § 1 (General Statutes, 1918, §4980), this section was amended to substantially the form in which it now appears as §4911 of the General Statutes

of 1930, including, in substitution for the above-mentioned provisions as to basis of the tax, the sentence concluding the section: "The value of the estate as set forth in the accepted inventory of an estate shall be the basis for computing the succession or inheritance tax." Therefore it appears from the legislative history of § 4911 that the provisions therein for report of inventory to the state officer administering the succession tax laws and reappraisal or correction upon his application, and making the inventory values the basis for computing the tax, have been consistently integral parts of the succession tax statutes.

Section 2367 of the General Statutes of 1902 provided that, after deducting specified exemptions "the rest of the estate of every deceased person" shall be subject to the tax. Chapter 332 of the Public Acts of 1915, which was a revision and amplification of the prior statutes, included a provision (§ 5) that "The net estate for taxation purposes shall be ascertained by adding to the appraised value of the inventoried estate" all gains and deducting losses incurred during the settlement of the estate in reducing choses in action to possession, except income accruing after death, also deducting "the amount at death of all unpaid mortgages not deducted in the appraisal of property mortgaged," and certain specified expenses and allowances (General Statutes, 1918, § 1263). This was succeeded, in § 5 of Chapter 190 of the Public Acts of 1923, by provisions that the gross estate "shall be the total of the appraised inventory values of all the property subject to the succession tax . . ." and that the net estate "shall be ascertained by adding to the appraised value of the gross estate all gains made in reducing choses in action to possession, except income accruing after death," and deducting specified items, including those mentioned in § 1263 of the Gen-

eral Statutes of 1918. The same form was followed in § 3 of Chapter 83 of the Public Acts of 1927. This was superseded by provisions in Chapter 299 of the Public Acts of 1929 that (§ 9) the gross estate shall be "the total of the fair market value of all the property transferred subject to the tax," plus gains made in reducing to possession choses in action, including notes and mortgages, but not including corporate or governmental stocks or bonds, and not including income after death and (§ 10) that the net estate shall be ascertained by deducting from the gross taxable estate specified items, including those stated in § 1263 of the General Statutes of 1918, except that losses incurred in reducing choses in action to possession were limited similarly to the gains mentioned in the preceding section. These provisions have been continued in substance in §§ 1368 and 1369 of the General Statutes and § 490c of the Cumulative Supplement of 1935.

We are unable to attach to the 1929 amendment the significance claimed by the plaintiff as working or contemplating a departure from the appraised value of an estate, as fixed and stated by the inventory finally accepted, as the basis for computation of this tax and as permitting, instead, the substitution of the values of the property passing to the beneficiaries, ascertained as of the date of distribution to them. The expression "fair market value" therein instead of "appraised inventory value" as in the preceding statutes, may well have been used because the statute then made taxable not only transfers by will or statutes of descent and distribution but also prior transfers in contemplation of death or intended to take effect in possession or enjoyment at or after death. It does not connote any change in the basis for ascertainment of values, since § 4911 of the General Statutes requires that inventoried property "shall be appraised at its

fair market value," and the provision that the inventory values shall be the basis for computing the tax continues to be retained. In *Warner* v. *Corbin,* 91 Conn. 532, 534, 100 Atl. 354, it was said of the statutory provisions concerning inventory that "These provisions make it clear that the appraisal upon which succession taxes are to be paid shall be made upon the basis of actual value. . . . They leave no room for doubt that what is aimed at is an appraisal which shall fairly and correctly represent the true value of the property of the estate. . . ." See also *Hopkins Appeal,* 77 Conn. 644, 655, 60 Atl. 657.

No significance affecting the basis of the tax can be deduced from the provision in § 1380 (Cum. Sup. 1935, § 495c) that the return therein required to be filed by the fiduciary with the tax commissioner shall include a statement of "the value of the estate passing to each . . . beneficiary." The necessary inference is that the value therein referred to is that ascertained as and upon the basis which, as above stated, is prescribed by other sections of the statute. There is, too, a significant lack of any provision as to how, by whom, and under what safeguards any other than inventory values are to be determined. If any other valuation was intended, it would seem that regulations for making it, similar to those in § 4911 of the General Statutes pertaining to reappraisal of inventoried property, would be prescribed.

Computation upon the basis of value at any time other than the death of the testator also would be inconsistent with the theory underlying our tax, which is imposed upon the right of succession to property, the value of the property being only used as a measure of the tax. *Blodgett* v. *Bridgeport City Trust Co.,* 115 Conn. 127, 161 Atl. 83. "The right of inheritance or succession becomes fixed and determined at the mo-

ment of the death of the owner, and although distribution occurs a considerable time thereafter, it relates back to the date of the death as the time when the right of the beneficiary became fixed." Idem, 144; *Blodgett* v. *New Britain Trust Co.,* 108 Conn. 715, 720, 145 Atl. 56. See also *In re Clark's Estate,* 105 Mont. 401, 424, 74 Pac. (2d) 401, 114 A. L. R. 496, 510; 26 R. C. L. p. 232; A. L. R., Vol. 86, p. 1031, Vol. 32, p. 850, Vol. 13, p. 127.

Section 4911 of the General Statutes provides that the inventory and appraisal shall be of such property interests as the decedent "had at the time of his death" and as its purpose is to reflect the state of his property at that time the valuation should be, as it is in practice, made as of that date. 1 Cleaveland, Hewitt & Clark, Connecticut Probate Law & Practice, p. 243. As is usual in such laws, our statute, § 1387, provides that the tax "shall be due at the death of the transferor." "In view of these provisions fixing the accrual of tax at date of death, the courts of practically all of the states . . . have held the time when the value of property is to be determined for the purpose of fixing the inheritance tax in the state of the decedent to be at the date of the decedent's death." Kidder, State Inheritance Tax and Taxability of Trusts, 329.

When so determined, the amount of the tax is not affected by a decrease in the value of the estate between that date and its subsequent distribution, unless and to such extent only as is otherwise provided by the statute, notwithstanding that hardship may result, as in the present case. Gleason & Otis, Inheritance Taxation (4th Ed.) p. 571; 61 C. J., p. 1692; *Matter of Penfold,* 216 N. Y. 163, 167, 110 N. E. 497; *Hooper* v. *Bradford,* 178 Mass. 95, 97, 59 N. E. 678; *Matter of Davis,* 149 N. Y. 539, 546, 44 N. E. 185; *In re Estate of Graves,* 242 Ill. 212, 218, 89 N. E.

978; *Hartman's Case,* 70 N. J. Eq. 664, 668, 62 Atl.
560; *Estate of Hite,* 159 Cal. 392, 395, 113 Pac. 1072.
As already stated, since 1915 (Public Acts, Chap. 332,
§ 5) our statute, now § 1369 of the General Statutes,
has allowed a deduction of "losses incurred . . . in the
reduction to possession of choses in action, including
notes and mortgages," but (since 1929) "not includ-
ing corporate or governmental stocks or bonds."
Primarily, "reduction to possession" signifies the con-
version of a right existing as a claim into actual cus-
tody and enjoyment. Anderson's Law Dictionary, 792,
cited in *Klee* v. *Grant,* 23 N. Y. S. 855, 53 C. J. 666.
The form of the tax return prescribed by the tax com-
missioner indicates, however, a construction including
the sale or conversion otherwise into cash of choses
in action, but it cannot, at most, be held to cover a
decrease in market value of choses in action owned
by the decedent, which are retained in the estate
unsold and distributed to the heirs or legatees, as the
record indicates is the situation in the present in-
stance. Also, for actuating reasons which must be
assumed to be valid, the Legislature has specifically
excepted stocks and bonds from the deductions author-
ized.

It is apparent from the legislative history of our
statute and the cases pertaining thereto that experi-
ence has suggested and produced frequent and material
amendments, induced not only by practical considera-
tions of administration but also by injustices in opera-
tion—to the state as through devices contrived to
avoid subjection to the tax, and to the taxpayers as
through taxation upon the entire inventory value
without benefit of deductions which experience has
established as fair and which, as above noted, have
been granted from time to time until now (Cum. Sup.
1935, § 490c) they comprise nine specified classifica-

tions and cover the deductions for expenses and allowances which have elsewhere been recognized as legitimate. 26 R. C. L., p. 229, Perm. Sup. p. 5738. In a few states it is provided that the tax shall be computed on the value of each legacy or distributive share at the expiration of one year after the death of the decedent or if paid earlier, as of the date when the legatee or distributee comes into possession or beneficial use thereof. 61 C. J., p. 1693. Whether situations such as that obtaining in the present case are sufficiently persuasive, as against countervailing considerations—including the correlative fact that beneficiaries take the benefit of any gains in value of stocks and bonds during the settlement of the estate without increase in the tax—to warrant a further extension of the deductions already allowed or a different basis of computation is a legislative rather than a judicial problem. We are bound by the statutes as we are constrained to construe them.

There is no error.

In this opinion the other judges concurred.