HERBERT BROWNELL, JR., ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA *v*. THE UNION AND NEW
HAVEN TRUST COMPANY, ADMINISTRATOR D.B.N.,
C.T.A. (ESTATE OF ANNA E. HARTMANN)

BALDWIN, O'SULLIVAN, WYNNE, DALY and COMLEY, Js.

Argued June 14—decided July 24, 1956

*Myron C. Baum,* of the District of Columbia bar, with whom were *Henry C. Stone,* assistant United States attorney, and, on the brief, *Dallas S. Townsend,* assistant attorney general, *Simon S. Cohen,* United States attorney, *James D. Hill,* of the Iowa bar, *George B. Searls,* of the District of Columbia bar, and *Westley W. Silvian,* of the Minnesota bar, for the appellant (plaintiff).

*Jeremiah D. Shea,* for the appellee (defendant).

BALDWIN, J. On January 28, 1952, the plaintiff, attorney general of the United States and successor to the alien property custodian, acting under the authority conferred upon him by an act of Congress known as the Trading with the Enemy Act; 40 Stat. 411, as amended, 50 U.S.C. App. §§ 1-40 (Sup. 1956); and by presidential executive orders made pursuant thereto, issued an order which purported to vest in himself immediately the interests of certain German nationals who were legatees under the will of Anna E. Hartmann, deceased. Vesting Order No. 18727, 17 Fed. Reg. 976. The plaintiff claimed that their shares in the estate were property which should be delivered to him by virtue of this order, a copy of which was filed in the Probate Court for the district of Middletown. The Probate Court treated the vesting order and a letter of transmittal accompanying it as an application for an order of distribution to the plaintiff and refused to issue the order. The plaintiff appealed to the Superior Court, which rendered judgment sustaining the Probate Court. The plaintiff has appealed from this judgment.

The facts are not in dispute. Anna E. Hartmann, a Middletown resident, died testate on September 8, 1922, leaving her husband, Peter Hartmann, surviving. She named him as executor of her will and gave her estate to nephews and nieces, children of her two sisters, subject to a life use in her husband. One of the sisters was then living and the other was deceased. Peter died in West Haven on August 2, 1948. His will was duly probated, and his executor surrendered the property which he had held as a life tenant to the estate of his wife, Anna. On December

27, 1949, upon the application of The Union and New Haven Trust Company, administrator d.b.n., c.t.a., and after due notice, the Probate Court for the district of Middletown made an ascertainment of the distributees of Anna's estate, together with their respective shares, but failed to order distribution to them. These distributees, Anna's nephews and nieces, were, with two exceptions, German nationals residing in Germany.

The Probate Court, in refusing to issue an order of distribution to the plaintiff, ruled, in effect, that the decree of December 27, 1949, ascertaining the distributees of Anna's estate determined the question of the title of the legatees and rendered res adjudicata the question who is entitled to distribution. The first decisive issue is whether the Probate Court was correct in that ruling. If it was not, the second decisive issue is whether it was required to act upon the vesting order filed by the plaintiff.

Our probate courts have a limited jurisdiction. Their powers are conferred by statute. General Statutes § 6813; 1 Locke & Kohn, Conn. Probate Practice, § 38. No question of the jurisdiction of the Probate Court over the parties or the subject matter is raised here. Unquestionably, the court had the power to enter a decree ascertaining the distributees under Anna's will and ordering distribution to them. General Statutes § 7056; *Killen* v. *Klebanoff,* 140 Conn. 111, 117, 98 A.2d 520; *Culver* v. *Union & New Haven Trust Co.,* 120 Conn. 97, 102, 179 A. 487. The court also had the jurisdiction and the power to determine incidental questions so far as necessary to enable it to reach a correct conclusion in the administration of the estate. General Statutes § 7056; *Mack's Appeal,* 71 Conn. 122, 130, 41 A. 242; 1 Locke & Kohn, op. cit., p. 173; *Ministers Benefit Board* v.

*Meriden Trust Co.,* 139 Conn. 435, 449, 94 A.2d 917; *Culver* v. *Union & New Haven Trust Co.,* supra; *Chase National Bank* v. *Schleussner,* 117 Conn. 370, 376, 167 A. 808. A probate court may find to whom title belongs, but only, in a case such as the one at bar, as an incidental step in exercising its power to determine distributees and order distribution. The legality of the conclusion reached by the court on the question of title can be attacked later in an independent proceeding in a court properly exercising legal and equitable powers. *Homer's Appeal,* 35 Conn. 113, 114; *Hewitt's Appeal,* 53 Conn. 24, 37, 1 A. 815; *Mack's Appeal,* 71 Conn. 122, 131, 41 A. 242; *Wilson* v. *Warner,* 84 Conn. 560, 565, 80 A. 718; 1 Locke & Kohn, op. cit., §§ 90, 93, 140-141, 155; 2 id. § 596.

The decree of December 27, 1949, did not order distribution but merely purported to ascertain distributees. The ascertainment of distributees is incidental to an order of distribution. *Mack's Appeal,* supra, 129; *Hotchkiss' Appeal,* 89 Conn. 420, 429, 95 A. 26; *Slattery* v. *Woodin,* 90 Conn. 48, 52, 96 A. 178. Standing alone, it is improper and unnecessary. *Chase* v. *Benedict,* 72 Conn. 322, 328, 44 A. 507; 2 Locke & Kohn, op. cit., §§ 596, 605. We conclude that the decree of December 27, 1949, did not make the issue of title to the distributive shares res adjudicata and that the failure of the Probate Court to include an order of distribution leaves the matter of distribution still subject to an order of that court.

We pass now to consideration of the second issue. The plaintiff claims that the Probate Court should order distribution to him. He argues that, irrespective of its powers under Connecticut law, the Probate Court, as a matter of constitutional law, is bound to enforce his vesting order. An act of Congress and

executive orders authorized, as a war measure, the appointment of an alien property custodian who was directed and empowered to seize property of every description in the United States belonging to the nationals of every country with which our country was at war. 40 Stat. 415, 418, as amended, 50 U.S.C. App. §§ 5(b)(1), 6, 7(c); Exec. Order No. 9095, 3 C.F.R. Cum. Sup. (1943) 1121, as amended, Exec. Order No. 9193, 3 C.F.R. Cum. Sup. (1943) 1174. Section 2(f) of the last cited executive order gave the alien property custodian power to vest in himself, for the United States, "any property of any nature whatsoever which is in the process of administration by any person acting under judicial supervision . . . and which is payable or deliverable to, or claimed by, a designated enemy country or national thereof." This power was transferred to the attorney general of the United States by executive order No. 9788. 3 C.F.R. Sup. (1946) 169. It was pursuant to the authority conferred upon the plaintiff by statute and order that he purported, on January 28, 1952, to seize the interests of those of Anna's legatees who lived in Germany by issuing, in the usual course, vesting order No. 18727. 17 Fed. Reg. 976.

In the exercise of war powers Congress and the president can, unhampered by constitutional provisions concerning due process and just compensation, divest the title of property located in the United States and owned by enemy nationals. *Silesian-American Corporation* v. *Clark,* 332 U.S. 469, 476, 68 S. Ct. 179, 92 L. Ed. 81; *Cummings* v. *Deutsche Bank,* 300 U.S. 115, 120, 57 S. Ct. 359, 81 L. Ed. 545; *Commercial Trust Co.* v. *Miller,* 262 U.S. 51, 56, 43 S. Ct. 486, 67 L. Ed. 858; *Todeva* v. *Oliver Iron Mining Co.,* 232 Minn. 422, 430, 45 N.W.2d 782; *Matter of Bendit,* 214

App. Div. 446, 450, 212 N.Y.S. 526; *Bunzen* v. *Davis,* 36 Wash. 2d 778, 780, 220 P.2d 653. Courts have construed the seizure provisions of this legislation most liberally. *Cities Service Co.* v. *McGrath,* 342 U.S. 330, 333, 72 S. Ct. 334, 96 L. Ed. 359; *United States* v. *Chemical Foundation, Inc.,* 272 U.S. 1, 10, 47 S. Ct. 1, 71 L. Ed. 131. It has been held to apply to all kinds of property. *Mutzenbecher* v. *Ballard,* 16 F.2d 173, aff'd, 16 F.2d 174 (chose in action); *Estate of Zimmerman,* 132 Cal. App. 2d 702, 283 P.2d 68 (claim to funds deposited in the state treasury for want of known heirs); *Todeva* v. *Oliver Iron Mining Co.,* 232 Minn. 422, 430, 45 N.W.2d 782 (workmen's compensation award); *Miller* v. *Lautenburg,* 239 N.Y. 132, 145 N.E. 907 (inchoate right of dower); *Matter of Bendit,* supra (interests in a spendthrift trust). In *Commercial Trust Co.* v. *Miller,* 262 U.S. 51, 56, 43 S. Ct. 486, 67 L. Ed. 858, the alien property custodian had instituted suit to seize the property of enemy nationals. The court said: "[T]he suit is of as peremptory character as 'seizure *in pais*' and is the dictate and provision for the emergency of war, not to be defeated or delayed by defenses, its only condition, therefore, being the determination by the Alien Property Custodian that it was enemy property."

The effect of a vesting order is to divest title in the enemy national and transfer it to the alien property custodian. *Central Union Trust Co.* v. *Garvan,* 254 U.S. 554, 569, 41 S. Ct. 214, 65 L. Ed. 403. The powers conferred by the federal act and the presidential executive orders relating to such seizures were terminated as of October 19, 1951, by joint resolution of Congress and proclamation of the president, except as they might pertain to properties of enemy nationals in which those nationals had an

interest prior to January 1, 1947. Jt. Res. 289, 65 Stat. 451; Proc. No. 2950, 66 Stat. c3; *LaDue & Co.* v. *Brownell,* 220 F.2d 468, 471, cert. denied, 350 U.S. 823, 76 S. Ct. 50, 100 L. Ed. 736.

A determination by the alien property custodian and by this plaintiff, his successor, that certain properties are subject to seizure is conclusive. But after they have been seized, his right to continue to hold them may be raised in an administrative procedure provided for by the act or in an action in the federal courts. 40 Stat. 419, as amended, 50 U.S.C. App. § 9(a), and 60 Stat. 50, as amended, 50 U.S.C. App. § 32 (Sup. 1956) ; Exec. Order No. 9193 § 2, 3 C.F.R. Cum. Sup. (1943) 1174; *Stoehr* v. *Wallace,* 255 U.S. 239, 246, 41 S. Ct. 293, 65 L. Ed. 604; *Central Union Trust Co.* v. *Garvan,* supra, 567; see *Markham* v. *Tibbetts,* 79 F. Sup. 47, 54. These remedies are exclusive. *Sturchler* v. *Sutherland,* 19 F.2d 999, 1008; *Josephberg* v. *Markham,* 152 F.2d 644, 649. It is needless to say that the interpretation given to federal legislation by the federal courts is binding upon state courts.

We are presently concerned, not with the powers of a court of general jurisdiction, but with the powers of a probate court. Article VI of the federal constitution makes that constitution and the laws of the United States adopted pursuant to it the supreme law of the land and concludes: ". . . the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." In *Hoxie* v. *New York, N.H. & H.R. Co.,* 82 Conn. 352, 373, 73 A. 754, we held that the Superior Court should refuse to accept jurisdiction of an action brought under the Federal Employers Liability Act; 35 Stat. 65, as amended, 45 U.S.C. §§ 51-60; by an employee of a

common carrier against his employer for injuries due to the negligence of a fellow employee, because a recovery for such injuries was not allowed in this state. The decision in the *Hoxie* case controlled our decision in *Mondou* v. *New York, N.H. & H.R. Co.,* 82 Conn. 373, 375, 73 A. 762, which was appealed to the Supreme Court of the United States and there reversed. *Mondou* v. *New York, N.H. & H.R. Co.,* 223 U.S. 1, 32 S. Ct. 169, 56 L. Ed. 327. The court stated (p. 57): "The suggestion that the act of Congress is not in harmony with the policy of the State, and therefore that the courts of the State are free to decline jurisdiction, is quite inadmissible, because it presupposes what in legal contemplation does not exist. When Congress, in the exertion of the power confided to it by the Constitution, adopted that act, it spoke for all the people and all the States, and thereby established a policy for all. That policy is as much the policy of Connecticut as if the act had emanated from its own legislature, and should be respected accordingly in the courts of the State." *Testa* v. *Katt,* 330 U.S. 386, 392, 67 S. Ct. 810, 91 L. Ed. 967; *Case* v. *Bowles,* 327 U.S. 92, 102, 66 S. Ct. 438, 90 L. Ed. 552; *Propper* v. *Clark,* 337 U.S. 472, 485, 69 S. Ct. 1333, 93 L. Ed. 1480; *Lyon* v. *Singer,* 339 U.S. 841, 842, 70 S. Ct. 903, 94 L. Ed. 1323; *Keppelmann* v. *Keppelmann,* 91 N.J. Eq. 67, 71, 108 A. 432. This does not mean, however, that Congress can impose upon a state court the duty of enforcing federal legislation utterly foreign to its jurisdiction. The power to act as the federal legislation may require must be at least within the general jurisdiction of the court. *Mondou* v. *New York, N.H. & H.R. Co.,* 223 U.S. 1, 56, 32 S. Ct. 169, 56 L. Ed. 327.

Whether the vesting order and the letter which

accompanied it should be treated as an application for an order of distribution or not, it was nevertheless the duty of the Probate Court to cause the estate to be settled and distributed. The assets of the estate are in the hands of the administrator d.b.n., c.t.a., under the supervision of the court, which has the implied powers necessary and incidental to the performance of its statutory duties. General Statutes § 6813; 1 Locke & Kohn, Conn. Probate Practice, §§ 86, 87; *Hall* v. *Pierson*, 63 Conn. 332, 342, 28 A. 544. The presentation of the vesting order placed before the Probate Court the issue of the distribution of the estate. At this point the problem is a practical, as well as a legal, one. The parties have treated the matter as though there were a formal application by the plaintiff for an order of distribution to him. As a matter of fact, no formal application was filed. The vesting order was accompanied by a letter to the Probate Court which stated that by virtue of the order the plaintiff had "acquired all right, title, interest and claim of any kind or character whatsoever of the persons therein named."

If we grant that the vesting order and the accompanying letter amounted to an application for an order of distribution to the plaintiff, we nevertheless have to conclude that the Probate Court acted correctly in denying distribution to the plaintiff, although the court placed its decision on erroneous grounds. A distribution is only the separation and division of that to which the distributees are already entitled by virtue of a will or the Statute of Distributions. It relates back to the date of the death of the testator and disregards equities arising after death. *Kingsbury* v. *Scovill*, 26 Conn. 348, 352; *Holcomb* v. *Sherwood*, 29 Conn. 418, 419; *Hewitt's Appeal*, 53 Conn. 24, 37, 1 A. 815; *Ward* v. *Ives*, 75

Conn. 598, 601, 54 A. 730; *State ex rel. Moriarty* v. *Donahue,* 82 Conn. 308, 311, 73 A. 763; *Cooley* v. *Pigott,* 84 Conn. 323, 325, 80 A. 92; *Phelan* v. *Elbin,* 84 Conn. 208, 212, 79 A. 187; *Ward* v. *Ives,* 91 Conn. 12, 18, 98 A. 337; *Newell* v. *McLaughlin,* 126 Conn. 138, 143, 9 A.2d 815; 2 Locke & Kohn, Conn. Probate Practice, § 597. Therefore, an order of distribution to the legatees under Anna's will is the only proper one the Probate Court can make, and in refusing to order distribution to the plaintiff the court reached a correct result.

The questions presented in these proceedings are novel and unprecedented in this state. In the interests of justice they should be determined now as finally as it is possible. To resolve what appears to be an impasse we outline the following procedure: The Probate Court should make a proper order of distribution. In that way the specific property belonging to the German nationals can be determined. It is the duty of an executor or an administrator upon settlement of the administration account to apply to the court for such an order. *State* v. *Culhane,* 78 Conn. 622, 626, 63 A. 636; *Sanford* v. *Thorpe,* 45 Conn. 241. When the order of distribution is made, the Probate Court should direct the administrator d.b.n., c.t.a., to comply with the vesting order by turning over to the plaintiff the property distributable to the German nationals. By this action the Probate Court will not be determining a disputed question of title but will merely be requiring the fiduciary to perform the duty devolving upon it by virtue of the Trading with the Enemy Act and the seizure made thereunder. The Probate Court will thereby accomplish a settlement of the estate. The issue of title as between the German nationals and the United States could thereafter be deter-

mined in another tribunal in accordance with the remedy provided under federal law.

There is no error.

In this opinion the other judges concurred.