[Civ. Nos. 51276, 51384-51388, 51392, 51393, 51396, 51398, 51400-51402. First Dist., Div. Four. May 25, 1983.]

Conservatorship of the Person and Estate of DONNA LAMBERT.
STAN L. DIXON, as Public Guardian, etc., Petitioner and Respondent, v.
DONNA LAMBERT, Objector and Appellant.

[And 12 other cases.]*

*Conservatorship of Bruce Alexis Kaliamos; Conservatorship of Terry Leroy Newbill; Conservatorship of Mildred Irene Young; Conservatorship of Elizabeth Michele Gallo; Conservatorship of Eliza Yancey; Conservatorship of Edward Lloyd Oliver; Conservatorship of Patrick A. Chandler; Conservatorship of Fred W. Cline, Jr.; Conservatorship of Louise Bickel; Conservatorship of Camellia Faye Utterback; Conservatorship of Rosemarie Bigelow; Conservatorship of Jean Romberg.

**COUNSEL**

William C. Connell, Public Defender, William R. Bragg, Deputy Public Defender, David Lowe, Jacob Smith, Steve Nielsen, John E. McDermott, Mary S. Burdick, Robert F. Tardiff, Jr., Dan Stormer, Richard Rothschild and Neal S. Dudovitz for Objectors and Appellants.

Raymond Schneider, County Counsel and William J. Losh, Jr., Acting County Counsel, for Petitioner and Respondent.

John K. Van de Kamp, Attorney General, Thomas Warriner, Assistant Attorney General, and Charlton G. Holland, Deputy Attorney General, as Amici Curiae on behalf of Petitioner and Respondent.

OPINION

POCHÉ, J.—In these thirteen consolidated appeals we review orders approving either annual or final accountings[1] of the public guardian of Humboldt County in his capacity as the appointed conservator of the estate of each appellant.[2] In each case, the conservatee's estate consisted solely of social security benefits, except for appellant Donna Lambert's, whose also contained supplemental security income (SSI) benefits. In each instance, the county counsel of Humboldt County served as the attorney for the public guardian.

During the relevant accounting periods the public guardian, as the representative payee (42 U.S.C. § 405, subd. (j); see 20 C.F.R. § 404.2001 et seq.), received each conservatee's social security benefits directly from the Social Security Administration (SSA).

In each petition the public guardian requested the court to award fees for his services and those of his attorney. California law expressly provides for such an award: "The public guardian shall have a claim against the ward's estate for his reasonable expenses incurred in the execution of the . . . conservatorship, and such compensation for his services and those of his attorney as the court in which his accounts are settled deems just and reasonable." (Welf. & Inst. Code, § 8013; see also Prob. Code, § 2623.)[3]

---

[1] By California law, a conservator is required to make an annual accounting and in conjunction with a petition to discharge the conservator, a final accounting. (See Prob. Code, §§ 2620-2630.)

[2] Each appointment arose under the provisions of the Lanterman-Petris-Short Act (LPS). (Welf. & Inst. Code, § 5350 et seq.) The LPS provides for the establishment, administration and termination of conservatorships for gravely disabled persons in much the same manner as set forth in Division 4 (commencing with § 1400) of the Probate Code. (Welf. & Inst. Code, § 5350.)

The record does not reflect the basis for the finding that each appellant was gravely disabled within the meaning of the LPS Act. (See Welf. & Inst. Code, § 5008, subd. (h).)

[3] Probate Code section 2623 provides in relevant part: "The guardian or conservator shall be allowed all of the following: [¶] (a) The amount of the reasonable expenses incurred in the exercise of the powers and the performance of the duties of the guardian or conservator (including, but not limited to, the cost of any surety bond furnished, reasonable attorney's fees, and such

Objection to the taking of such fees was made by each conservatee on the ground that fees could not be awarded from funds traceable to social security or SSI benefits. In each case the trial court overruled the objection and entered an order settling the account and awarding fees where appropriate.

No objection was lodged below nor is any raised here as to the reasonableness of the amount of the fees awarded. The superior court was well aware of its statutory obligation to consider both the value of the services rendered and the amount of the conservatee's estate in setting fees which are "just and reasonable." (Welf. & Inst. Code, § 8013; see Prob. Code, § 2623.) In the court's own words: "If the ability to pay is less than the full value of the services, then the fees must be lowered accordingly."[4]

■ The sole issue thus presented on appeal is whether the federal anti-attachment statute (42 U.S.C. § 407), which immunizes social security income from "execution, levy, attachment, garnishment, or other legal process," conflicts with a court order awarding conservator's costs and attorney's fees from an estate consisting solely of that type of income.[5] We find no conflict.

Appellants contend that the prohibition of the use of "legal process" to reach social security payments bars the county from recouping any part of the actual cost of the conservatorship. To support such an absolutist interpretation of section 407, appellants point to the decision in *Philpott* v. *Essex County Welfare Board* (1973) 409 U.S. 413 [34 L.Ed.2d 608, 93 S.Ct. 590], which involved a far different factual setting.

There a disabled person, who was capable in part of providing for his own care, applied for and received welfare assistance. As a precondition to receiving the aid, he was required to execute an agreement to reimburse the county welfare board. When he later obtained social security disability benefits the

---

compensation for services rendered by the guardian or conservator of the person as the court determines is just and reasonable). [¶] (b) Such compensation for services rendered by the guardian or conservator as the court determines is just and reasonable. . . ."

[4]For example, the conservator requested $15 for his fees and the same for his attorney in his petition to settle the first annual accounting of appellant Cline. The accounting showed that Cline's estate consisted of only $72.15. Accordingly, the trial court awarded no fees.

With respect to appellant Lambert, the conservator had requested $150 for his fees and the same for his attorney for the three-year period. The trial court awarded in fees the difference between one month's benefits ($374.60) and the total estate ($468.18) which equalled the sum of $93.40 and ordered that amount to be divided equally between the conservator and his attorney.

[5]The identical prohibition for SSI benefits is found in 42 United States Code section 1383 (d)(1).

Unless otherwise indicated, all further statutory references are to title 42 of the United States Code.

county invoked the agreement to obtain the federal payments which had been deposited in an account held for him by his trustee. A unanimous Supreme Court rejected the county's argument that it was entitled to such monies as a preferred creditor: "We see no reason why a State, performing its statutory duty to take care of the needy, should be in a preferred position as compared with any other creditor." (At p. 416 [34 L.Ed.2d at p. 611].) ". . . [S]ection 407 does not refer to any 'claim of creditors'; it imposes a broad bar against the use of any legal process to reach all social security benefits. That is broad enough to include all claimants, including a State." (At p. 417 [34 L.Ed.2d at p. 612].)

A more recent decision by the United States Court of Appeals for the Fifth Circuit demonstrates that *Philpott* has no application to the facts at hand. In *Department of Health, etc.* v. *Davis* (5th Cir. 1980) 616 F.2d 828, the State of Florida had taken care of an incompetent, Glasscock, in a state hospital. Under Florida law, the Department of Health and Rehabilitative Services was authorized to seek reimbursement for Glasscock's care and maintenance, so Florida sought to recover $12,000 from Glasscock's guardian who had accumulated $40,000 in social security and veterans' benefits.

The Fifth Circuit held that the antiattachment statute[6] for social security benefits (§ 407) did not preclude Florida from recovering its costs from the fund. *Philpott* was distinguished by limiting its thrust to its peculiar facts, a welfare recipient who was merely receiving state assistance in providing for himself, in contrast to the situation in *Davis* where the state, acting *in loco parentis,* had been providing all of the recipient's care, support and maintenance. (*Davis, supra,* 616 F.2d at p. 830.) "Since Glasscock has the ability to pay, . . . and the funds held by his guardian were received for his care and maintenance, the state's request for reasonable reimbursement is entirely justified." (*Id.,* at p. 832.)

*Davis* is grounded explicitly upon the recognition that the purpose of the exemption of social security payments from the grasp of legal process is to preclude beneficiaries from directing their social security payments away from the "seminal goal" of the social security system itself: "furnishing financial, medical, rehabilitative and other services to needy individuals." (*Id.,* 616 F.2d at p. 831.)

---

[6]The court also held that Florida was not precluded by the equivalent statute for veteran's benefits (38 U.S.C. § 3101 (a)) which provides that "[p]ayments . . . shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." (*Davis, supra,* 616 F.2d at pp. 831-832.)

We also note that cases preceding *Davis* allowed governmental institutions providing care to incompetent veterans to recover subsistence costs from the veteran's benefit checks. (See *Savoid* v. *District of Columbia* (D.C. Cir. 1961) 288 F.2d 851, 852; *District of Columbia* v. *Reilly* (D.C. Cir. 1957) 249 F.2d 524, 525.)

In the cases at hand both the purpose of the exemption and the underlying purpose of the Social Security Act as defined in *Davis*, are served by the court-monitored system of conservatorships for those who by reason of disability are unable to care for themselves or their estates. Both the social security benefits and the costs of the conservatorship are, as in *Davis,* for the "care and maintenance" of the conservatee. (*Id.,* at p. 830; see *Helvering* v. *Davis* (1937) 301 U.S. 619, 641-645 [81 L.Ed.2d 1307, 1315-1317, 57 S.Ct. 904, 109 A.L.R. 1319].) Without the effective use of the conservatorship it is doubtful that care and maintenance of the social security beneficiary could be effectuated at all.

There is no contention in any of the cases before us that the amount of fees set by the court was unreasonable. Thus, we conclude that an award of "just and reasonable" fees which takes into account both the size of conservatee's estate and his or her future needs does not violate section 407.

Finally, we note that our conclusion is consistent with that of the SSA, which has advised us that "it does not object to the payment of court approved fees from Social Security benefits to a representative payee filing an accounting in his capacity as a court appointed fiduciary for a Social Security recipient. In addition, at the present time, SSA perceives no federal policy impediment to such payments, so long as they are approved by the court and are reasonable in view of the recipient's total circumstances."

Interpretations of a federal statute by a federal agency, although not binding on the courts, are entitled to great weight. (*Brennan* v. *Owensboro-Daviess Cty. Hosp., etc.* (6th Cir. 1975) 523 F.2d 1013, 1028, cert. den., 425 U.S. 973 [48 L.Ed.2d 796, 96 S.Ct. 2170]; *Campos* v. *Employment Development Dept.* (1982) 132 Cal.App.3d 961, 967 [183 Cal.Rptr. 637].) In our view, the SSA's approval of the practice challenged here removes any and all doubt as to its validity.

The orders are affirmed.

Rattigan, Acting P. J., and Moscone, J.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 27, 1983.

---

*Assigned by the Chairperson of the Judicial Council.