## STATE OF CONNECTICUT *v.* ENRICA AMORE
## (12975)

HEALEY, SHEA, CALLAHAN, F. HENNESSY and SPADA, Js.

Argued April 9—decision released September 1, 1987

*Edward F. Reynolds, Jr.,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellant (state).

*John L. Pottenger, Jr.,* with whom were *Stephen Wizner* and, on the brief, *Miriam Berkman, Sally Zanger, Robert A. Solomon, Mary A. McCarthy* and *Craig Parrish, Elyn Saks* and *Stephen Behnke,* legal interns, for the appellee (defendant).

ARTHUR H. HEALEY, J. In this action, which comes to us by way of reservation from the Superior Court, the

parties seek advice on the following questions: (1) "Does Section 207 of the Social Security Act, 42 U.S.C. Sec. 407, by virtue of the Supremacy Clause of the United States Constitution, preclude the State of Connecticut from using legal process to require the defendant representative payee of social security benefits belonging to Charles Amore, a patient confined at a state mental hospital, to pay over any of those benefits received during the period June 13, 1978, through October 29, 1983, to satisfy the institutional support charges assessed under Conn. Gen. Stat. Sec. 17-295 (c) for that period?" (2) "Does Section 207 of the Social Security Act, 42 U.S.C. Sec. 407, by virtue of the Supremacy Clause of the United States Constitution, preclude the State of Connecticut from attaching the individually owned assets of the defendant representative payee to recover the costs of the confined beneficiary's care and treatment at a state humane institution pursuant to Conn. Gen. Stat. Sec. 17-295 (c)?"

The parties have stipulated to the following facts: From June 13, 1978, through October 29, 1983, Charles Amore a/k/a Cataldo Amore was a patient at the Connecticut Valley Hospital, a state humane institution for the care of mentally ill persons. During this time period, the defendant, Enrica Amore, was the representative payee of his social security benefits and, on his behalf, received social security benefits totaling $32,765.10. Pursuant to General Statutes § 17-295 (c),[1] the state

---

[1] General Statutes § 17-295 (c) provides: "Each patient, the husband or wife of such patient and the father and mother of a patient under the age of eighteen years each shall be legally liable from the date of admission for the support of such patient in such institution in accordance with his ability to pay; except that the maximum liability of legally liable relatives as such for a patient in a state humane institution, except a state training school for mentally retarded persons, shall not exceed that amount of support which has been charged by the commissioner, for a period or periods amounting to sixteen years unless earlier terminated as to a parent by attainment by the patient of eighteen. The guardian, conservator and payee of

billed the defendant in her capacity as representative payee of the social security benefits belonging to Charles Amore in the sum of $14,707.71 for the support and maintenance it had provided to Charles Amore while he resided as a confined patient at the Connecticut Valley Hospital.[2] No payments have been received by the state from the defendant against her account as representative payee of social security benefits belonging to Charles Amore.

In an attempt to collect the $14,707.71 in outstanding charges, the state filed suit against the defendant. On June 7, 1984, the court, *O'Brien, J.,* granted the state's application for an ex parte prejudgment real estate attachment upon the defendant's real property in the amount of $17,000. On October 5, 1984, the defendant moved to strike the state's complaint on the ground that § 207 of the Social Security Act, 42 U.S.C. § 407, "bars the use of any legal process against the only funds for which the defendant, as representative payee, may be liable." On April 22, 1985, the court, *Hon. Harold M. Mulvey,* state trial referee, denied the defendant's motion. The parties then requested that the court reserve the aforementioned questions for the advice of the Appellate Court. On April 25, 1986, the court, *Fracasse, J.,* granted that request. On June 16, 1986, this court transferred the reservation to itself.

Social Security or other beneifts on behalf of any such patient shall be similarly responsible for the support of such patient, but shall be liable in such capacity only in accordance with the amount of the patient's estate or the benefits received, or both, as the case may be. Said commissioner may bill and accept payment from any other person or agency willing to assume any portion of the cost of support of a person in a state humane institution at such rate as such person or agency is willing to pay."

[2] In her brief and at oral argument, the defendant pointed out that, contrary to the stipulation, her marriage to Charles Amore had been dissolved on September 23, 1970. This fact is not crucial to our disposition of this reservation because the state's claim against the defendant is not brought against her as a "legally liable relative." See General Statutes § 17-295 (c).

## I

The first question reserved to this court presents the issue of whether, under the facts of this case, 42 U.S.C. § 407 prohibits the state from using legal process to require the defendant, the representative payee of social security benefits of Charles Amore, a confined patient at a state humane institution, to pay over any of those benefits to satisfy the institutional support charges assessed by the state.

It is clear that General Statutes § 17-295 (c) provides the state with a cause of action against a representative payee for the support of a patient confined to a state humane institution. Section 17-295 (c) provides in part: "The guardian, conservator and payee of Social Security or other benefits on behalf of any [patient confined to a state humane institution] shall be [legally liable from the date of admission] for the support of such patient, but shall be liable in such capacity only in accordance with the amount of the patient's estate or the benefits received, or both, as the case may be." The question presented here is whether 42 U.S.C. § 407, by virtue of the supremacy clause, precludes the state from asserting such a cause of action.[3]

The relevant portion of the Social Security Act, 42 U.S.C. § 407, provides that "[t]he right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution,

---

[3] Article VI of the constitution of the United States provides in part: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law."

The defendant maintains that the state is precluded from asserting its claim under § 17-295 (c) because "[o]n its face . . . the federal Social Security Act shields the disability benefits it generates from the legal grasp of creditors," including the state, and that by virtue of the supremacy clause the Connecticut statute cannot be used as a vehicle for attaching those funds. Specifically, the defendant argues that § 407's prohibition of the use of "legal process" to reach social security payments bars the state from recouping any part of the support costs. In support of this interpretation of § 407, the defendant points to the decision of the United States Supeme Court in *Philpott* v. *Essex County Welfare Board,* 409 U.S. 413, 93 S. Ct. 590, 34 L. Ed. 2d 608 (1973). In opposition to the defendant's argument that the federal statute and the *Philpott* case clearly prohibit the state from pursuing its claim against the defendant in this case, the state argues that *Philpott* is distinguishable from this case and that both federal and state case law subsequent to *Philpott,* as well as the pertinent federal regulations, make it "evident that the bar created by Section 407 is not absolute and may be defeated if the legislative intent is not frustrated in the process."

In *Philpott* v. *Essex County Welfare Board,* supra, Wilkes, a disabled person who was capable in part of providing his own care, applied for and received welfare assistance from the Essex County welfare board in the state of New Jersey. The county determined monthly maintenance needs by taking into consideration "any other benefits." Because at the time Wilkes applied for the welfare benefits he was not receiving "any other" benefits, full welfare benefits were awarded to him. As a precondition to receiving such aid, Wilkes executed

an agreement to reimburse the county welfare board if and when he later received assets. Thereafter, Wilkes applied for disability benefits under the Social Security Act and was awarded benefits retroactively in one lump sum. This money was deposited in a bank account Philpott held as trustee for Wilkes. Pursuant to the agreement to reimburse, the county sued for repayment. The United States Supreme Court rejected the county's claim and held that the "all inclusive" language of the Social Security Act barred the state of New Jersey from reaching the federal disability payments paid to Wilkes.

The state argues that the critical difference between this case and *Philpott* v. *Essex County Welfare Board,* supra, is that in *Philpott* the state sought to attach social security funds which were in a bank account of a welfare beneficiary who was a *nonconfined* patient then living independently in the community at large. The state argues that "unlike the fact pattern extant in *Philpott* [v. *Essex County Welfare Board*], supra, the case at bar involves not the recovery of public welfare assistance from the Social Security beneficiary himself, but rather involves the payment of the customary charges assessed for the support and maintenance of an *institutionalized* patient from the representative payee of his Social Security benefits." (Emphasis added.) The state argues that this distinction is "crucial" because the scope of 42 U.S.C. § 407 has been refined by certain provisions of the Code of Federal Regulations as well as by federal case law. We agree with the position advocated by the state.

The language of the pertinent federal regulations provides that the general proscription of 42 U.S.C. § 407 does not necessarily prohibit the state from seeking reimbursement in a situation where the state is providing for the current maintenance needs of an institu-

tionalized social security beneficiary.[4] For example, 20 C.F.R. § 404.1606 (1978), which is entitled "Use of benefits for beneficiary in institution," provides in part: "Where a beneficiary is confined in a Federal, State or private institution because of mental or physical incapacity, the relative or other person to whom payments are certified on behalf of the beneficiary, *shall give highest priority* to expenditure of the payments for the current maintenance needs of the beneficiary, *including the customary charges made by the institution* (see § 404.1604) in providing care and maintenance. It is considered in the best interests of the beneficiary for the relative or other person to whom payments are certified on the beneficiary's behalf to allocate expenditure of the payments so certified in a manner which will facilitate the beneficiary's earliest possible rehabilitation or release from the institution . . . . " The defendant argues that the second sentence of this regulation supports his position that a representative payee is *not* required to reimburse the state for the current maintenance charges. We disagree with the defendant's interpretation of this regulation. The fact that under the regulation "[i]t is considered in the best interests of the beneficiary for the [representative payee] to allocate . . . the payments . . . in a manner which will facilitate the beneficiary's earliest possible rehabilitation or release" does not undercut the fact that the representative payee must "give *highest priority*" to the beneficiary's current maintenance needs.

Additionally, 20 C.F.R. § 404.1604 (1978), which is entitled "Use of benefits for current maintenance," pro-

---

[4] Section 405 (a) of title 42 of the United States Code grants the secretary of health and human services the power to adopt rules and regulations which are necessary to carry out the provisions of the Social Security Act. Despite the defendant's claim to the contrary, we perceive no conflict between the statute and the regulations which would require a different disposition of this reservation.

vides: "Payments certified to a relative or other person on behalf of a beneficiary shall be considered as having been applied for the use and benefit of the beneficiary when they are used for the beneficiary's current maintenance . . . . Where a beneficiary is receiving care in an institution (see § 404.1606) current maintenance *shall include the customary charges* made by the institution to individuals it provides with care and services. . . ." (Emphasis added.) Moreover, 20 C.F.R. § 404.1608 (1978), which is entitled "Claims of creditors," provides in part: A "representative payee on behalf of a beneficiary may not be required to use such payments to discharge an indebtedness of the beneficiary which was incurred before the first month for which payments are certified to a relative or other person on the beneficiary's behalf. . . ." The conclusion to be drawn from these regulations is that in situations where the social security beneficiary is confined in an institution because of mental or physical incapacity, the representative payee may be required to pay the current maintenance charges which were incurred during the representative payee's tenure as representative payee.[5]

---

[5] We note that in 1983, these regulations were amended and are now codified in 20 C.F.R. 404.2040, which provides: "USE OF BENEFIT PAYMENTS.

"(a) Current maintenance. We will consider that payments we certify to a representative payee have been used for the use and benefit of the beneficiary if they are used for the beneficiary's current maintenance. Current maintenance includes costs incurred in obtaining food, shelter, clothing, medical care, and personal comfort items. . . .

"(b) Institutional care. If a beneficiary is receiving care in a Federal, State, or private institution because of mental or physical incapacity, current maintenance includes the customary charges made by the institution, as well as expenditures for those items which will aid in the beneficiary's recovery or release from the institution or expenses for personal needs which will improve the beneficiary's conditions while in the institution. . . . .

"(c) Support of legal dependents. If the current maintenance needs of the beneficiary are met, the payee may use part of the payments for the support of the beneficiary's legally dependent spouse, child, and/or parent. . . .

"(d) Claims of creditors. A payee may not be required to use benefit pay-

In further support of its position, the state cites the decision of the Fifth Circuit Court of Appeals in *Department of Health* v. *Davis,* 616 F.2d 828 (5th Cir. 1980). In *Davis,* a case virtually identical to the present case, the Fifth Circuit Court of Appeals distinguished the holding in *Philpott* and demonstrated that *Philpott* does not apply to a situation, such as the present case, where the state is seeking reimbursement for the current maintenance needs of a confined patient. In *Davis,* the court stated: *"Philpott* is different from this case, however, since there the welfare recipient was capable, at least in part, of providing for his own care, and the state was not acting in loco parentis, as it is here. The beneficiary in *Philpott* was merely receiving assistance in providing for himself. [This beneficiary], however, determined to be incompetent by the Veteran's Administration since February 21, 1952, has been in confinement until the present because he is apparently incapable of caring for himself to any degree. [This beneficiary] has had no needs during the period he has been in the Florida State Hospital that were not met by the state. Accordingly, the state is seeking to have the guardian, who is responsible for overseeing her ward's care and maintenance, do what is required by Florida law: apply the benefits received by the ward for care

ments to satisfy a debt of the beneficiary, if the debt arose prior to the first month for which payments are certified to a payee. If the debt arose prior to this time, a payee may satisfy it only if the current and reasonably foreseeable needs of the beneficiary are met. . . ."

We also note that regulations spelling out the particular duties and obligations of representative payees to pay the support charges of an institutionalized beneficiary do not exist in the field of public welfare assistance, and thus such a regulatory refinement from the general proscription of 42 U.S.C § 407 was not available to the court in *Philpott* v. *Essex County Welfare Board,* 409 U.S. 413, 93 S. Ct. 590, 34 L. Ed. 2d 608 (1973), because that case did not deal with confined patients and their relationship to social security benefits paid to a representative payee, but rather, involved a beneficiary living independently in the community at large who had the responsibility of providing for his own needs from the social security benefits.

and maintenance to reimburse Florida for undertaking his care and maintenance. Thus, contrary to the guardian's argument, *Philpott* does not control the outcome of this case." *Department of Health* v. *Davis,* supra, 830.[6]

In cases closely analogous to the present case, other courts have relied on the rationale set forth by the Fifth Circuit Court of Appeals in *Davis.* See, e.g., *Bennett* v. *State,* 290 Ark. 47, 716 S.W.2d 755 (1986); *Conservatorship of Estate of Lambert,* 143 Cal. App. 3d 239, 191 Cal. Rptr. 725 (1983); *State Treasurer* v. *Brown,* 125 Mich. App. 620, 337 N.W.2d 23 (1983); *Sharlot* v. *Sharlot,* 110 App. Div. 2d 299, 494 N.Y.S.2d 238 (1985); see also *United States* v. *Devall,* 704 F.2d 1513, reh. denied, 714 F.2d 1068 (11th Cir. 1983); *Matter of Treadwell,* 699 F.2d 1050 (11th Cir. 1983). Similarly, we agree with the reasoning of the Fifth Circuit Court of Appeals and conclude that *Philpott* does not control the present case.

*Davis* is explicitly grounded upon the recognition that the purpose of the § 407 exemption for social security payments from legal process is to preclude beneficiaries from directing their social security payments away from the "seminal goal" of the social security system itself: "furnishing financial, medical, rehabilitative and other resources to needy individuals." *Department of*

---

[6] The court also held that Florida was not precluded by the analogous statute for veteran's benefits, 38 U.S.C. § 3101 (a), which provides that "[p]ayments . . . shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." *Department of Health* v. *Davis,* 616 F.2d 828, 831–32 (5th Cir. 1980). We note that cases preceding *Davis* permitted governmental institutions providing care to incompetent veterans to recover subsistence costs from veteran's benefit checks. *Savoid* v. *District of Columbia,* 288 F.2d 851, 852 (D.C. Cir. 1961); *District of Columbia* v. *Reilly,* 249 F.2d 524, 525 (D.C. Cir. 1957); *In re Lewis' Estate,* 287 Mich. 179, 283 N.W. 21 (1938); *In re Matter of Guardianship of Dugan,* 29 Misc. 2d 980, 222 N.Y.S.2d 831 (1961).

*Health* v. *Davis,* supra, 831; see *Bennett* v. *State,* supra; *Conservatorship of Estate of Lambert,* supra, 243; *State Treasurer* v. *Brown,* supra, 624; see also *United States* v. *Devall,* supra, 1516; *Matter of Treadwell,* supra, 1053. As the court held in *Davis:* In situations where the state is providing for the current maintenance needs of a confined person, "[n]either the purpose of the benefits, nor the purpose of the exemption is accomplished by barring [the state] from reimbursement." *Department of Health* v. *Davis,* supra; *Bennett* v. *State,* supra; *Conservatorship of Estate of Lambert,* supra; *State Treasurer* v. *Brown,* supra; *Department of Treasury* v. *Ivy,* 65 Mich. App. 447, 452, 237 N.W.2d 498 (1975), aff'd sub nom. *In re Vary Estate,* 401 Mich. 340, 258 N.W.2d 11 (1977), cert. denied, 434 U.S. 1087, 98 S. Ct. 1283, 55 L. Ed. 2d 793 (1978); see *Brown* v. *Brown,* 32 Ohio App. 2d 139, 288 N.E.2d 852 (1972); *Texas Baptist Children's Home* v. *Corbitt,* 321 S.W.2d 610 (Tex. Civ. App. 1959) (guardian compelled to apply social security benefits received by minor childen to their maintenance costs in a welfare home).

The defendant argues that we should not follow the Fifth Circuit Court of Appeals' decision in *Davis* because that case was "wrongly decided," is an "aberration" and is "clearly inconsistent" with *Philpott.* We are unpersuaded. In this respect, we note that just as federal courts will find guidance in an interpretation of a state statute made by the courts of the enacting state, we think it appropriate that, under the circumstances of this case, we look to the Fifth Circuit Court of Appeals' interpretation of 42 U.S.C. § 407 to guide our interpretation of that federal statute. See *State* v. *Benitez,* 157 Conn. 384, 391, 254 A.2d 564 (1969); *International Union* v. *General Electric Co.,* 148 Conn. 693, 702, 174 A.2d 298 (1961); *Snyder* v. *Newtown,* 147 Conn. 374, 380, 161 A.2d 770 (1960), appeal dismissed, 365 U.S. 299, 81 S. Ct. 692, 5 L. Ed. 2d 688 (1961); *Brownell*

v. *Union & New Haven Trust Co.*, 143 Conn. 662, 669, 124 A.2d 901 (1956); see also *Anderson* v. *Lester,* 382 So. 2d 1019, 1027–29 (La. App.), cert. denied, 420 U.S. 1045, 101 S. Ct. 1767, 68 L. Ed. 2d 244 (1980); *United States* v. *Ersinger Mill & Lumber Co.,* 202 Md. 613, 618, 98 A.2d 81 (1953); *Philips* v. *Williams,* 608 P.2d 1131 (Okla.), cert. denied sub nom. *Shabezz* v. *Williams,* 449 U.S. 860, 101 S. Ct. 162, 66 L. Ed. 2d 76 (1980); cf. *Graham* v. *Scissor-Tail, Inc.,* 28 Cal. 3d 807, 830, 623 P.2d 165, 171 Cal. Rptr. 604 (1981).

In cases presenting this issue or an analogous issue, at least five other courts have followed the rationale set forth in *Davis. Bennett* v. *State,* supra; *Conservatorship of Estate of Lambert,* supra; *State Treasurer* v. *Brown,* supra; *Sharlot* v. *Sharlot,* supra; see *United States* v. *Devall,* supra; *Matter of Treadwell,* supra. These cases undercut the defendant's argument that Davis is an "aberration." Additionally, we do not agree with the defendant that *Davis* is "clearly inconsistent" with *Philpott* in that *Davis,* like the present case, presents a factual situation different from that presented in *Philpott.* We believe that *Davis* was soundly decided and we adopt its reasoning. "The purpose of social security benefits for the disabled is to provide for their care and maintenance." *Department of Health* v. *Davis,* supra. Our disposition of this reservation does not frustrate that purpose. Because, under the circumstances of this case, there is no conflict between General Statutes § 17-295 (c) and 42 U.S.C. § 407, the state is not precluded, by virtue of the supremacy clause, from using legal process to require the defendant to pay the institutional support charges assessed by the state.

## II

The second question reserved to this court is does "42 U.S.C. Sec. 407, by virtue of the Supremacy Clause . . . preclude the State of Connecticut from attach-

ing the individually owned assets of the defendant representative payee to recover the costs of the confined beneficiary's care and treatment at a state humane institution . . . ?'' We conclude that our disposition of the first question reserved to this court requires that we answer the second question reserved in the negative.

The answer to each of the questions reserved is "no."

No costs will be taxed in this court to any party.

In this opinion the other justices concurred.