[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The State of Connecticut has applied to this Court under General Statutes § 52-278a et seq for the entry of prejudgment orders attaching the assets of each tobacco manufacturer defendant in this case in the amount of $2 billion. The stated purpose of the requested orders is to secure the State's potential recovery against each such defendant on its pending claims for damages and other monetary relief under the Connecticut Unfair Trade Practices Act (CUTPA) and the Connecticut Antitrust Act.
The defendants oppose this motion on several grounds, claiming generally: (1) that the State has no right to pursue a prejudgment remedy under prevailing Connecticut law; (2) that even if the State is not legally barred from pursuing a prejudgment remedy in Connecticut, it has not complied with the mandatory requirements of the governing statutes, General Statutes § 52-278a et seq.; and (3) that whether or not the State complies with the requirements of General Statutes § 52-278a et seq., the Court should exercise its discretion not to hold a hearing on its application at this time.
 I. The State's Right to Pursue a Prejudgment Remedy
The defendants' argument that the State has no right to pursue a prejudgment remedy under prevailing Connecticut law is based squarely on the language and legislative history of General Statutes §§ 52-278a and 52-278b. Section 52-278b, entitled "Availability of prejudgment remedy," provides as follows:
 Notwithstanding any provision of the general statutes to the contrary, remedy shall be available to a person in any action at law or equity (1) unless he has complied with the provisions of sections 52-278a to 52-278g, inclusive, except an action upon a commercial transaction wherein the defendant has executed a waiver as provided in section 52-278f, or (2) for the garnishment of earnings as defined in subdivision (5) of section 52-350a.
(Emphasis added.) Section 52-278a, entitled "Definitions," in CT Page 12728 turn provides that:
 The following terms, as used in sections 52-278a to 52-278g inclusive, shall have the following meanings, unless a different meaning is clearly indicated from the context:
 (a) "Commercial transaction" means a transaction which is not a consumer transaction.
 (b) "Consumer transaction" means a transaction in which a natural person obligates himself to pay for goods sold or leased, services rendered or moneys loaned for personal, family or household purposes.
 (c) "Person" means and includes individuals, partnerships, associations, limited liability companies and corporations.
 (d) "Prejudgment remedy" means any remedy or combination of remedies that enables a person by way of attachment, foreign attachment, garnishment or replevin to deprive the defendant in a civil action of, or affect the use, possession or enjoyment by such defendant of, his property prior to final judgment but shall not include a temporary restraining order.
 (e) "Property" means any present or future interest in real or personal property, goods, chattels or choses in action, whether such is vested or contingent.
(Emphasis added.)
The defendants first claim that the plain language of Sections 52-278a and 52-278b clearly bars the State from seeking an attachment in this case. An attachment, they rightly argue, is a purely statutory remedy which, because it did not exist at common law, must be narrowly confined, both in scope and in availability, to the limits prescribed by its authorizing statute. Farmers Mechanics Savings Bank v. Garofalo,219 Conn. 810, 813-14 (1991). These statutes, claim the defendants, must therefore be strictly enforced because they expressly apply to all "prejudgment remed[ies]," and that term, as defined in Sections 52-278a(4), broadly includes "any remedy or combination of remedies that enables a person by way ofCT Page 12729attachment . . ., to deprive the defendant in a civil action of, or affect the use, possession or enjoyment by such defendant of, his property prior to final judgment." (Emphasis added.) Under the foregoing definition, the defendants continue, the availability of the prejudgment "remedy . . . of attachment" is explicitly limited to those who qualify as "person[s]" under Section 52-278a(3). Since that provision, unlike many other sections of the General Statutes which define the term "person" for other legal purposes, does not list the State explicitly,[1] or use any other term that could reasonably be claimed to denote or describe it, the defendants argue that the State is legally barred from pursuing an attachment in this or any case.
This narrow restriction, the defendants further argue, is entirely consistent with the legislative history and underlying purpose of Sections 52-278a and 52-278b. Originally passed in 1973, as parts of Public Act 73-431, those statutes were adopted in response to mounting concern, fueled by recent cases from the United States Supreme Court[2] and the United States District Court for the District of Connecticut,[3] that Connecticut's prejudgment attachment and garnishment statutes would be held unconstitutional for failure to provide adequate notice and a meaningful pre-deprivation hearing to those whose property could be encumbered thereunder. The dual purpose of the statute was thus to preserve the harsh but useful prejudgment remedies of attachment, garnishment, foreign attachment and replevin for proper use in limited circumstances, but at the same time to minimize instances where they might be issued arbitrarily or without justification by requiring their advance approval by a judge after notice and a due process hearing. The intended scope of the new statute was thus intended to be universal. No plaintiff was to be excused from its requirements, and no defendant was to be left unguarded by its protective shield. Against that background, it is argued, the Legislature's omission of the State from the list of "persons" who could pursue a prejudgment remedy thereunder was no mere oversight. Instead, claim the defendants, it was obviously a conscious decision to keep or remove these "coercive" remedies from the State's "arsenal of litigation weapons." Defendants' Memorandum In Opposition To Have A Prejudgment Attachment Motion Heard At This Time, page 31.
The State responds to the defendants' arguments with several counterarguments of its own. Initially, though it concedes that CT Page 12730 the remedy of attachment did not exist at common law, and thus that it is a purely statutory remedy whose scope and availability are strictly limited by controlling state statutes, it urges this Court to find that that remedy is not conferred by General Statutes § 52-278a et seq., but by General Statutes §52-279. Section 52-279, which pre-existed Section 52-278a et seq., by many years and still exists to this day, provides in pertinent part as follows:[4]
 Attachments may be granted upon all complaints containing a money demand against the estate of the defendant, both real and personal.
This language, claims the State, expressly confers the right to seek an attachment upon every party to a civil action who brings a "complaint containing a money demand against the estate of the defendant[.]" Therefore, it assertedly grants that right to the State as well, permitting it, no less than any private plaintiff, to seek a prejudgment remedy of attachment in any civil action where it files a complaint "containing a money demand against the property of the defendant, real or personal."Id. Consistent with this analysis, the State further argues that no Connecticut case, either before or after the passage of General Statutes § 52-278 et seq., asPublic Act 73-431, has ever suggested, much less held, that the State is excluded from the class of civil parties who may pursue a prejudgment remedy of attachment. Indeed, a long list of prominent Connecticut jurists have long made suggestions to the contrary. The list includes: Judge Norris O'Neill, who inState v. Lindsay, No. CV 95-0552547-S (J.D. Hfd/N.B. March 26, 1996), upheld a prejudgment attachment in favor of the State without noting, sua sponte, that its issuance in any way violated Section 52-278a et seq.; Judge (later Justice) David M. Shea, who while sitting with the Appellate Session of the Superior Court in 1977, concurred in Dupuis v. WaterCommissioner, 34 Conn. Sup. 586, 590 (1977) with the observation that the State, as a party to a "normal civil action . . . undoubtedly . . . would have sought and obtained a prejudgment remedy[;]" and, most importantly, the full Connecticut Supreme Court, in Thibeault v. White, State WelfareCommissioner, 168 Conn. 112, 117-18 (1975) (which ruled that the defendant Commissioner was not empowered to make a summary seizure of CT Page 12731 property to satisfy a welfare lien, because "[t]here are adequate procedures with regard to prejudgment remedies which can secure the total amount owing to the state pending the acquisition of judgment. . .") (Emphasis added.) and State v.Amore, 205 Conn. 104, 115-16 (1987) (which held, in responding to a question reserved for its consideration, that "42 U.S.C. § 407, by virtue of the Supremacy Clause . . . [does not] preclude the State of Connecticut from attaching the individually owned assets of the defendant representative payee to recover the costs of the confined beneficiary's care and treatment at a state humane institution. .[.]") Against this background, the State argues that its once and future right to seek a prejudgment attachment against the property of any civil defendant against whom it files a "complaint containing a money demand" is protected to this day by General Statutes §52-279.
The State also argues that neither the language nor the legislative history of General Statutes § 52-278a et seq., evidences any intent by the Legislature to deprive the State of its pre-existing right to pursue a prejudgment attachment. The text, claims the State, is not so worded as to create or confer upon anyone the right to pursue any kind of prejudgment remedy. Instead, it is worded in the negative, declaring that "no prejudgment remedy shall be available to a person in any action at law or equity (1) unless he has complied with the provisions of sections 52-278a to 52-278g, inclusive." (Emphasis added.)
Accordingly, nothing in the legislative history ofPublic Act 73-431 indicates that the Legislature's purpose was to limit the substantive availability of a prejudgment remedy. Rather, the entire focus of the legislators' discussion was, as the defendants also argue, on the need to adopt a procedure requiring notice and a pre-deprivation hearing before the granting of most prejudgment remedies, to head off anticipated due process challenges to existing procedures. The State thus contends that the Legislature's true purpose was to protect all
defendants who might be made subject to erroneous prejudgment attachments, garnishments or other prejudgment deprivations of property, not to limit the parties at whose instance such a deprivation might be initiated.
The State further argues that the language of Section 52-278a
(3) is broad enough to include the State within its definition of the term "person." Section 52-278a (3), to reiterate, provides that for the purposes of Section 52-278a et seq., the term CT Page 12732 "person" "means and includes individuals, partnerships, associations, limited liability companies and corporations." (Emphasis added.) The insertion of the words "and includes" after the word "means" in the preface to this definition necessarily implies that the definition is to be read more expansively than those listed in the other definitional subsections of Section 52-278a, all of which were introduced by the restrictive word "means." In light of this differential usage, and of the broad language of Section 52-279, the State claims that in the context of Section 52-278a, the term "person" must be read to include the State.
Finally, the State points out that if, per chance, the word "person" were not read so broadly as to include the State, then a bizarre and unintended result would occur. Specifically, since the procedural protections of Section 52-278a et seq, apply exclusively to "prejudgment remed[ies]," and a "prejudgment remedy," for the purposes of those statutes, "means any remedy or combination of remedies that enables a person [to encumber the property of a] defendant in a civil action [in certain statutorily designated ways] prior to final judgment," id.
(emphasis added), the State, as a non-person with a continuing right to pursue an attachment under Section 52-279, would not be bound by the protective procedures of those statutes. In that event, claims the State, this Court would be required determine what procedural protections would be necessary to protect the defendants, in the name of due process, from the risk of an erroneous deprivation of their property. The State doesn't contend this is what the Legislature intended. To the contrary, it insists that the more sensible reading of the statute is to include the State within the definition of "person," and thus to protect defendants sued by the State no less than defendants sued by others from the risk of erroneous prejudgment deprivations of their property.
Upon considering the parties' respective arguments, the Court has reached the following conclusions: first, that the State has a substantive right under General Statutes § 52-279 to seek a prejudgment attachment against any defendant in a Connecticut civil action against whom it has filed a complaint containing a money demand against the defendant's estate, real or personal;second, that the Legislature, in passing Section 52-278aet seq., intended not to modify the substantive scope of the attachment remedy, but to impose a mandatory set of notice and hearing requirements upon every party to a civil CT Page 12733 action who might seek an attachment, including the State; and thus third, that the State may lawfully seek a prejudgment remedy against any defendant from whom it has demanded monetary relief, provided it complies with the procedural requirements of Section 52-278a et seq.
The Court is persuaded that the State has a substantive right to pursue an attachment under Section 52-279 for the following reasons: First, the text of Section 52-279 is sufficiently broad and all-inclusive to grant the right to seek an attachment to the State. In interpreting a statute, a Court is bound to find and apply the intent of the Legislature. It must do so in the first instance by examining the text of the statute. State v. Roque,190 Conn. 143, 150-51 (1983). The text of Section 52-279 excludes no party to a civil action from the right to pursue an attachment except those whose complaints contain no money demand. The statute thus extends that right to every civil plaintiff whose complaint contains a demand for monetary relief. The State may therefore seek an attachment against any civil defendant whom it sues on a complaint containing a money demand.
Second, there is no reason in public policy to deny such a remedy to the State. Its attorneys general are commissioners of the superior court who, bound by their oaths of office, are no less subject to the legal and ethical constraints of their positions than private lawyers. The State, moreover, occupies a favored position in relation to other civil litigants, it generally being presumed that the State's affirmative rights to bring and pursue civil actions are not limited by general language in the statutes. See, e.g., State v. Anderson,82 Conn. 392 (1909). It would be highly irregular for language authorizing all civil plaintiffs to pursue a beneficial remedy by way of attachment to be read to exclude the State. Not surprisingly, the general rule in this country, as described in American Jurisprudence 2d, Attachments § 65, is that the right to pursue an attachment extends to the sovereign as well as to private parties.
Third, in Connecticut, as the State has argued, distinguished jurists have routinely acknowledged the State's right to pursue an attachment, both by explicit pronouncements to that effect, as in Thibeault v. White, State Welfare Commissioner, supra, andState v. Amore, supra, by failing to suggest, sua sponte, that the State's pursuit of prejudgement relief was beyond its subject-matter jurisdiction. Their words and actions — though CT Page 12734 concededly not holdings on the precise issue here presented — should not be regarded as ignorant failures to recognize obvious jurisdictional defect in the cases before them.
Connecticut v. Doehr, 501 U.S. 1 (1991), is not to the contrary when it observes that "[p]rejudgment remedy statutesordinarily apply to disputes between private parties, rather than between an individual and the government." Id. at 10. (Emphasis added.) That which is not "ordinary" still occurs. And, to be sure, most civil actions for money damages are brought by private parties, not by the State.
The Court is persuaded that the State Legislature, in passing Section 52-278a et seq., intended not to modify the substantive scope of the attachment remedy available under Section 52-279, but to impose a mandatory set of notice and hearing requirements upon every party to a civil action who might seek a prejudgment remedy. The Court's reasons for this conclusion are as follows:
First, and most obviously, Section 52-278a did not purport to repeal Section 52-279, as it might well have done had that been its purpose. Our Legislature has the well established practice of repealing and reenacting statutes it wishes to modify in substance. The fact that that was not done here is thus a matter of some significance.
Second, the language used in the text of Section 52-278a etseq did not necessarily contradict, or thus implicitly repeal, Section 52-279. At no point did it affirmatively grant, confer or create the right to seek and obtain a prejudgment remedy. At no point, moreover, did it identify any type of case or claim as to which an attachment might be sought, or designate who could or could not seek an attachment. Instead, to reiterate, it defined a "prejudgment remedy" as "any remedy or combination of remedies that enables a person by way of attachment, foreign attachment, garnishment or replevin to deprive the defendant in a civil action of, or affect the use, possession or enjoyment by such defendant of, his property prior to final judgment," and provided that the term "person," as used in the statute, "means and includes individuals, partnerships, associations, limited liability companies and corporations." The State is thus correct that the statute merely prescribes procedures which apply to itif it is a person, but do not apply to it at all if it is not a person. CT Page 12735
Third, the Legislature itself did not believe that by passing Section 52-278a et seq. it had repealed Section 52-279, for within 8 days of adopting those statutes, it voted separately to repeal and reenact Section 52-279, by enacting Public Act 73-495, entitled "An Act Concerning Attachments Against Connecticut Canine Control Officers and Regional Canine Control Officers." The passage of this Act is significant for two reasons. First, by pausing to repeal and reenact Section 52-279, the Legislature clearly demonstrated its view that that statute was still very much in effect. Why else amend it? Why not amend Section 52-278a
instead of Section 52-279 if the former's true purpose had been to supplant the latter as the one true source of substantive law on the right to pursue an attachment in Connecticut? Second, the preface to Public Act 73-495 explicitly purported to repeal "Section 52-279 of the 1969 supplement to the general statutes, as amended by number 4 and section 2 of number 201 of the public acts of 1972." This preface gives telling evidence that the Legislature did not regard Public Act 73-431, which had been passed and made effective just 8 days before, as an amendment to Section 52-279.
Fourth, even if Section 52-278a et seq, could somehow be read to limit the substantive right to bring a prejudgment remedy to a "person," as defined in Section 52-278a(3), the language of that definition must be read to include the State. The reasons for this conclusion are as follows. As the State rightly argues, the preface to the definition of "person" is markedly different from that of any other definition set forth in Section 52-278(a). Unlike every other definition in the statute, it starts with the words "means and includes," not simply with the word "means."
Our Supreme Court has long held that the word "includes," when used in a statutory definition, is so ambiguous as to require construction with the aid of other provisions in the statute, the statute's legislative history, and other standard tools of statutory construction. See, e.g., State v. White,204 Conn. 410, 422-23 (1987) (recognizing "that the word `include' may be considered a word of limitation as well as a word of enlargement[,]" and on that basis resorting to statutory construction to find its meaning in the case before it.);Maciejewski v. West Hartford, 194 Conn. 139, 147 (1984) (finding ambiguity in the Legislature's use of the word "including" in the introduction to a statutory definition). CT Page 12736
From the statutory context, a strong inference arises that the term "means and includes," as used in Section 52-278a(3), was intended to have a different meaning than the term "includes." Logically, since the term "means" is universally understood to have an exclusive meaning, the term "includes," which can have either a restrictive or an expansive meaning, should be read expansively, in this context, to embrace terms not explicitly listed in the statute. See, e.g., American Surety Co. v.Marotta, 287 U.S. 513, 517 (1933) (according restrictive interpretations to statutory definitions in the Bankruptcy Act introduced by the term "shall mean," but expansive interpretations to other statutory definitions in the Act introduced by the term "shall include"); Matter of Maidman,2 B.R. 569, 575 (S.D.N.Y. 1980) ("In contrast to several other definitional sections set forth in the Bankruptcy Act, Section 1(23) thereof, defining `person,' employs the term `shall include' rather than the phrase `shall mean.' It is clear that the first quoted clause is one of enlargement and extension unlike the second which is limited and restrictive. Accordingly, when the word `include' is utilized in a definitional section, it is generally improper . . . to conclude that entities not specifically enumerated in the definition of `person' are to be excluded."); Peerless Carbon Black Co. v. Shepherd,113 S.W.2d 996, 997 (Tex.Ct.Civ.App. 1938) (distinguishing the term "includes," as used in a statutory definition, from the terms "meant," "meaning," or "by which is meant," characterizing the former as a "word. . . of enlargement," and the latter as "words of limitation.").
In short, the inference is powerful, as both legally and logically, that the term "means and includes," as used in Section 52-278a(3), was intended to have an expansive meaning, unlike the term "means," with which every other definition in the statute is introduced.
Fifth, where there is ambiguity on the face of a statute, it should be read, insofar as possible, to preserve existing law. Where the result of such a reading is constitutional, consistent with other indicia of legislative intent, and not productive of bizarre results, it is plainly preferred over alternative readings which would change the law. Here, for all the reasons previously stated, the State's right to pursue an attachment was clearly established under Section 52-279 long before the passage of Section 52-278a et seq. Therefore, it would be appropriate to read the State into the statutory definition of the term CT Page 12737 "person" in the latter statute if the result of so doing would be constitutional, consistent with other indicia of legislative intent, and not productive of bizarre results.
In fact, such a result would be fully consistent with the intent of the Legislature in passing Public Act 73-431, for every indication in the legislative history, as both sides convincingly argue, is that the new statute should govern all prejudgment attachments except those specifically excepted in the statute — commercial attachments where there is a waiver and certain non-commercial attachments where a pre-hearing attachment is warranted by extraordinary circumstances, such as the impending removal of assets from the State. The legislative debates concerning the new statute did not suggest that anyone was to be exempted from its procedural requirements. Nor did it suggest that anyone who could previously pursue a prejudgment attachment would no longer be able to do so after its passage. In substance, then, the new statutes did not change the status quo, though procedurally, they brought about a sea change in the law governing prejudgment remedies.
In fact, the overarching concern of the Legislature was obviously to create a constitutionally sound set of procedures governing all prejudgment deprivations of property imposed on potential judgment debtors. The Legislature, in crafting those procedures, clearly wished them to apply to all who could pursue a prejudgment remedy under existing law. Against that background, any reading of the statute to exclude any group or class of plaintiffs from its reach would be ludicrous, as both sides persuasively argue. Logic suggests that if the substantive right of the State to pursue a prejudgment remedy was not taken away by the statute — and it was not — that the statute should be read and interpreted, as its words make possible, to include the State within the list of parties made subject to its procedural requirements. In sum, the word "person," as it appears and is used in Section 52-278a et seq., "means and includes" the State as well as each and every other type of plaintiff explicitly listed therein.
 II. The State's Compliance With The Mandatory Requirements of Section 52-278a et seq.
The defendants' argument that even if the State is not legally barred from seeking an attachment, it has not complied with the mandatory procedural requirements of the governing CT Page 12738 statutes, Section 52-278a et seq., is based on the language of Connecticut General Statutes §§ 52-278b and 52-278c. Section 52-278b, as previously noted, expressly conditions the availability of a prejudgment remedy on full compliance with the strict procedural requirements of the statute. Section 52-278c,[5]
in turn, provides that the applicant must append to his application for a prejudgment remedy several specific documents, including a formal
 notice and claim form, in such form as may be prescribed by the office of the Chief Court Administrator, containing the following language: "YOU HAVE RIGHTS SPECIFIED IN THE CONNECTICUT GENERAL STATUTES, INCLUDING CHAPTER 903a, THAT YOU MAY WISH TO EXERCISE CONCERNING THIS APPLICATION FOR A PREJUDGMENT REMEDY. THESE RIGHTS INCLUDE THE RIGHT TO A HEARING: (1) TO OBJECT TO THE PROPOSED PREJUDGMENT REMEDY BECAUSE YOU HAVE A DEFENSE TO OR SET-OFF AGAINST THE ACTION OR A COUNTERCLAIM AGAINST THE PLAINTIFF OR BECAUSE THE AMOUNT SOUGHT IN THE APPLICATION FOR THE PREJUDGMENT REMEDY IS UNREASONABLY HIGH OR BECAUSE PAYMENT OF ANY JUDGMENT THAT MAY BE RENDERED AGAINST YOU IS COVERED BY ANY INSURANCE THAT MAY BE AVAILABLE TO YOU; (2) TO REQUEST THAT THE PLAINTIFF POST A BOND IN ACCORDANCE WITH SECTION 52-278d OF THE GENERAL STATUTES TO SECURE YOU AGAINST ANY DAMAGES THAT MAY RESULT FROM THE PREJUDGMENT REMEDY; (3) TO REQUEST THAT YOU BE ALLOWED TO, SUBSTITUTE A BOND FOR THE PREJUDGMENT REMEDY SOUGHT; AND (4) TO SHOW THAT THE PROPERTY SOUGHT TO BE SUBJECTED TO THE PREJUDGMENT REMEDY IS EXEMPT FROM SUCH A PREJUDGMENT REMEDY."
Here, claim the defendants, the State has failed to comply with Section 52-278c by failing to attach a proper statutory notice to its application.
The State concedes, as it must, that it did not append a notice of rights form complying with Section 52-278c(e) to its application for an attachment. For that reason, its application must now be denied, without prejudice to its prompt resubmission with the proper notice and all other necessary documents appended to it.[6]
 III. The Court's Discretion Not To Hold A Hearing On The State's Application
The defendants' final argument in opposition to the State's CT Page 12739 application for a prejudgment attachment is that even if the State should eventually comply with all of the procedural requirements of Section 52-278a et seq., the Court should exercise its discretion not to hold a hearing on its application under its Practice Book authority to control and manage a complex civil case and/or its inherent authority to foster the fair, efficient processing of judicial business. This argument is made in three basic parts, each of which was discussed by the Court at its recent hearing on October 15, 1998. Though the defendants filed an additional brief in support of their position in the interim, the Court's view of the matter has not changed since the earlier hearing. Without repeating everything it said in discussing the defendants' argument on October 15, the Court concludes as follows:
First, as to the argument that the Court can dispense with any hearing on the State's request for a prejudgment attachment in order to foster a speedier trial on the merits of this case, the Court has been pointed to no authority suggesting that, in the absence of waiver or consent, it can deprive a party of a statutory remedy it is otherwise entitled to seek merely to expedite the processing of the balance of the case. Hence, though the Court is not obligated to set the matter down for a hearing on any particular time table, and is not obligated to "bump" other ready cases from their legitimate places on its list of trials, hearings, conferences and the like, it is not empowered to dispense with the remedy altogether in the name of judicial economy. It would be a bizarre and unfortunate rule, clearly inviting abuse in its application, that permitted judges to dispense with statutory rights in the name of expediency.
Second, as to the defendants' argument that pursuit of a prejudgment remedy will require massive effort, including substantial discovery, and thus will delay trial, the Court tends to agree with the defendants on all counts save one: that the Court, in light of this reality, has and should exercise the authority not to hold the requested hearing. The Court concurs with the defendants that in view of the massive deprivations proposed by the State, meaningful discovery must be provided before a meaningful hearing can be held. See L. Suzio ConcreteCo. v. Salafia, 3 Conn. App. 404, 407 (1985) (holding, interalia, that a defendant has a right to a meaningful pre-deprivation hearing on an application for a prejudgment remedy under General Statutes § 52-278a et seq.) In particular, discovery must be had on matters of defense, CT Page 12740 counterclaim and set-off, which may be based on information peculiar to Connecticut that has not yet been obtained by these defendants in their defense of other attorney-general actions. Though all of this discovery will eventually be needed for trial, the need to complete it promptly, so that its results can be used at an earlier prejudgment remedy hearing, may cause delay in trial preparation by disrupting the normal flow of pretrial discovery and otherwise diverting limited attorney resources. Moreover, if the Court's time is diverted from other important matters essential to trial preparation to deal with the special complexities of a prejudgment remedy hearing, the start of trial will predictably be delayed.
Even so, if the State chooses to resubmit its prejudgment remedy application in proper form, the Court will set the matter down for a hearing on a schedule that comports both with its own schedule for the processing of other cases and with the needs of these defendants for meaningful pre-hearing discovery. A definite trial date will thereafter be established as justice requires.
The defendants' third and final argument why the Court should exercise its discretion not to hold a hearing on any proper application the State may file for a prejudgment remedy is that if any such remedy were granted in this case — where the issues are complex and novel and the State's prospect of prevailing at all, much less in any particular amount, net of set-offs and counterclaims, is assertedly hard to calculate — an enormous bond would surely have to be posted to secure them against losses they may suffer as a result of the deprivation. Claiming that the State will be unable and unwilling to post any bond, much less the kind of massive bond that would doubtless be required here, the defendants suggest that the holding of a hearing in this case would be futile and pointless, because the requested remedy can never actually issue. The defendants are surely correct that this is the kind of case in which a bond to protect the defendants' interests against the risk of erroneous deprivation of their property may well be required. However, it would be premature for the Court now to say that a bond willnecessarily be required if any attachment is ordered. The Court has discretion under our statutes to consider whether or not to issue a bond, and if so, in what amount to set that bond. General Statutes § 52-278d. Moreover, both our State Supreme Court, in Sassone v. Lepore,226 Conn. 773, 787-88 (1993) and the Second Circuit Court of Appeals, in CT Page 12741Shaumvan v. O'Neil, 987 F.2d 122 (2d Cir. 1993), have held that a bond is not invariably necessary to secure a defendant against the risk of erroneous deprivation. If, then, the Court determines that all or part of any prejudgment attachment it may be willing to authorize must be secured by a bond, the attachment will not issue until the required bond is posted. In that event, any defendant whose property may eventually be attached will be fully protected against an erroneous deprivation, for there will be no deprivation at all until the bond is in place. If, by contrast, the Court determines that certain property can be attached without need for a bond, an appropriately limited attachment can issue accordingly. In short, to reiterate, it would be premature for the Court to rule on this issue at this time, and thus inappropriate not to hold a hearing on the strength of such a premature determination.
 CONCLUSION
For all of the foregoing reasons, the Court hereby denies the State's pending application for a prejudgment remedy without prejudice to its right to resubmit that application, together with a proper statutory notice of rights and all other appropriate documentation required by law, on or before November 10, 1998. If the State elects to resubmit its application in proper form, the Court will schedule a hearing thereon as soon as practicable in light of its own schedule and the defendants' clear need for prehearing discovery.
So ordered this 27th day of October, 1998.
Michael R. Sheldon, J.